## Sandy Land & Development Company v. Brown.

(Decided April 24, 1917.)

### Appeal from Floyd Circuit Court.

1. Municipal Corporations—Street Improvements—Lien of Contractor—Fifth Class Cities.—Under section 3643 of the Kentucky Statutes when a contractor makes improvements legally ordered under a city ordinance properly adopted, his lien has precedence over all other liens.

2. Municipal Corporations—Liens—Mechanics and Material Men.— A person who constructs street improvements under a contract as provided in section 2463 of the Kentucky Statutes has a lien on the property improved, but the lien is not superior to a prior vendor's lien.

3. Deeds—Acceptance and Delivery—Recording.—Where a vendee accepts a deed, it is his business to have it put to record, and his failure to do so will not affect his title to the property which vested in him by the delivery and acceptance of the deed.

4. Estoppel.—A contractor who did street improvement work under the belief that the property improved was owned by a corporation, could not assert a lien as against the corporation on the ground that it was estopped to dispute his lien, as the facts were not sufficient to justify the application of the doctrine of estoppel.

HARKINS & HARKINS for appellant.

J. C. HOPKINS for appellee.

Opinion of the Court by Judge Carroll—Reversing.

In his petition in this case Jeff Brown alleged that in September, 1914, he entered into a contract with Lee Salmons to furnish the labor and material and construct a concrete sidewalk adjacent to the property owned by Salmons in the town of West Prestonsburg, a city of the fifth class; that under his contract the labor and material furnished amounted to $148, and he asserted a lien on the property of Salmons and asked that it be sold for the satisfaction of his claim. He made the Sandy Land & Development Co. a defendant, asking that it be required to answer and assert any lien that it had or claimed to have against the property.

The suit was not brought to enforce a lien under section 3643 of the Kentucky Statutes, which section authorizes cities of the fifth class to order the improvement of streets and sidewalks and makes provision for the cost of the improvement, which is made a lien on the property improved, but was brought upon the theory that the work was done under a contract with Salmons and that Brown had a mechanics' lien under section 2463 of the Kentucky Statutes on the property to secure him in the value of the labor and material furnished.

The development company filed an answer, counter-claim and cross-petition, in which it averred that on November 24, 1912, it sold for five hundred dollars to Salmons the lots improved and conveyed the same to him by a deed, retaining a lien for the full amount of the purchase money, no part of which had been paid. It averred that its lien was superior to the lien of Brown and asked that the lots be sold and the proceeds applied in satisfaction of its debt.

Thereafter, and before any other pleadings had been filed or evidence taken, the property was sold by order of court and purchased by the development company for three hundred dollars. The judgment, however, did not determine the priority of the liens as between Brown and the development company.

Subsequently, Brown filed a pleading in the case setting up that his lien for the improvement was superior to the vendor's lien of the development company, and asking that so much of the proceeds of the sale as might be necessary to satisfy his claim be set apart for that purpose. In this pleading he averred, in substance, that the lots had not been sold or conveyed by the develop-

ment company to Salmons, or, if they had, the trade by agreement of parties had been rescinded and canceled; that one Hiram Harris, who was a stockholder and director in the development company, and also mayor of the city at the time the city council ordered the improvement to be made, told Brown that Salmons was the owner of the lots and had authorized him, Harris, to make the contract for the improvement, and prevailed on Brown to take the contract, although Harris, who was acting as the agent of the development company, knew at the time that the property was owned by the development company, and not by Salmons. He, therefore, charged that the development company was estopped by the conduct of its alleged agent, Harris, in misrepresenting the condition of the title of the property and in prevailing on Brown to do the work, from asserting any lien against it superior to his improvement lien.

Other pleadings completed the issues, and after the evidence had been taken, the court adjudged that the lien of Brown was superior to the lien of the development company, and directed that he be paid out of the three hundred dollars realized at the judicial sale of the property a sum sufficient to satisfy his debt, with interest and costs, and the development company appeals.

It appears from the evidence that on November 24, 1912, the development company sold to Salmons the lots that were improved, and in March, 1913, it made to him a deed, which was accepted by Salmons, but never put to record by him. Salmons also executed notes for the purchase price less $166.67, for which he gave his check, but the check was never paid.

It is the contention of counsel for Brown that the contract for the sale of these lots was rescinded, but we do not so understand the evidence bearing on this subject. After the deed had been delivered to and accepted by Salmons, the title to these lots was vested in him, subject, of course, to the lien for the unpaid purchase money, although Salmons did not have the deed put to record. It is the business of the vendee who accepts the deed to have it put to record if he wishes it recorded, and not the business of the vendor, but the failure of the vendee to have recorded a deed that he has accepted does not affect his title to the property which was vested in him by the delivery and acceptance of the deed.

Salmons says that the deed was executed, delivered to and accepted by him, and that he left it in the bank,

but did not know what had become of it. He also says that after the cost of these improvements was put against the lots, "he gave the lots up to J. M. Weddington, who he supposed was an agent for the development company." He testified that Weddington asked him whether he was going to take them or not, and he said he was not, and Weddington said it was all right. He further said that he had never claimed to be the owner of the lots or paid any taxes on them, and that Weddington agreed to take back the lots.

All that took place between Weddington and Salmons was mere talk; no writings were executed, and besides Weddington, who denied these statements of Brown, had no authority as an agent, or as an officer of the company, to rescind the contract for the sale of these lots, or to agree on behalf of the company that the trade should be canceled and the lots surrendered back to the company. There is no evidence whatever that Salmons ever made a deed conveying the lots back to the company or that any one authorized by the company agreed to take the lots back.

It is, however, on the ground of estoppel that the principal argument is made by counsel for Brown in support of the judgment. This plea of estoppel is rested on substantially these facts: It appears from the evidence that Hiram Harris, who was mayor of the city of Prestonsburg as well as a stockholder in and perhaps a director of the development company, and who also transacted business for the company as its local manager, went to see Brown and told him that he wanted him to do this improvement work, and Brown says that Harris told him that lots 79 and 80, adjacent to which the improvements here in question were made, had been sold by the development company to Salmons, and that he was authorized by Salmons to make a contract for the street improvement; that relying upon the representations of Harris that Salmons owned the lots and he, Harris, was acting as his agent in making the contract, he was induced to and did make the improvement. That he did not know except from what Harris told him that Salmons owned the lots, nor did Harris tell him that Salmons had not paid any part of the purchase price. That although nothing was said by Harris about whether Salmons had paid for the lots or not, he assumed when Harris told him that Salmons owned the lots that he had paid for them.

It also appears that after the talk Brown had with Harris and before he did any of the improvement work, he went to see Salmons with reference to the improvements, and Salmons told him that anything Harris said was all right with and satisfactory to him. It also appears from the evidence of Brown that the city council of West Prestonsburg had ordered the improvement of these lots and that the improvements were accepted by the city council, but there are no ordinances or records of the city council in this record.

It is now claimed that the development company is estopped by what took place between Harris and Brown from asserting any lien superior to or that would defeat the improvement lien of Brown. To this we cannot agree. Putting the case on this point as strongly as the evidence would warrant us, it merely amounts to this: Harris, who was a stockholder and director in the development company, and its agent in looking after these lots, told Brown that Salmons was the owner of the two lots and that he was authorized by Salmons to make a contract for their improvement; that acting upon this authority, Brown agreed to improve the lots, but afterwards, and before he had done any of the work, he told Salmons what had taken place between himself and Harris, and Salmons agreed that anything Harris said or did was satisfactory to him. Harris did not tell Brown that Salmons had not paid for the lots, nor was anything said about this. The evidence, we think, shows very clearly that Harris did not mislead or attempt to deceive Brown. He merely told him that Salmons owned the lots, which he did, and that he was authorized by Salmons to make a contract for their improvement, and he was.

The Mechanics' Lien Statute under which this improvement lien is sought to be enforced gives a senior vendor's lien priority over a mechanic's lien. A different rule appears to obtain in respect to street improvement liens where the street improvement has been ordered by the city council under section 3643 of the Kentucky Statutes, but this suit, as we have said, was not brought for the purpose of enforcing an improvement lien under this section. The facts stated in the pleadings and the evidence do not authorize us to consider this asserted lien as arising under this statute.

This is a hard case for Brown. He has expended labor and money in improving two lots of an insolvent party which were encumbered by a senior vendor's lien amount-

ing to more than the value of the lots after the improvements were made. Under the circumstances we regret that we cannot on the record before us affirm the judgment and give to Brown, who has a meritorious claim, the money he expended in making these improvements. Brown could have escaped the trouble he got into by making inquiry as to whether Salmons had made any payments on the lots, but unfortunately he did not do this, and the development company cannot be made to pay for these improvements on the ground that it was estopped to assert its superior lien by the conversations that took place between Brown and Harris, because even if we should assume that Harris was authorized to act in this matter for the development company, he did not say anything or refrain from saying anything that he was under a duty to say that could work an estoppel as against it.

Wherefore, the judgment is reversed, with directions to enter a judgment in conformity with this opinion.