## Fitzpatrick et al. v. Layne et al.
## Layne et al. v. Same

Oct. 9, 1942.

Claude P. Stephens for appellants in first case.

C. B. Wheeler for appellants in second case.

W. W. Burchett and Combs & Combs for appellee in both cases.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—

Affirming in first case and dismissing in second.

The two cases presenting different questions involving the same parties were consolidated in the court below for the purpose of preparation. The one first styled was an equitable action; the other an ordinary action with the issue submitted to a jury. In each case appellants, who were plaintiffs below, were unsuccessful. At this point we delineate the parties and give some history of matters leading up to the controversy involving family affairs, presenting not any too delectable a picture.

William R., John, Charles Layne and Chattie Fitzpatrick were children of Cyrus Layne, from whom they inherited a tract of land, partitioned by inter-parties deeds, William Layne receiving the 19 acres in controversy in the first case in which appellant was the sole plaintiff. The defendants were Annie Layne, widow of William Layne, Catherine Graves, executrix under William Layne's will, and a corporation which held a mineral lease. In the other action the brothers and the sister of William Layne, deceased, were plaintiffs; Annie Layne, widow, and the executrix, defendants. The parties appellant are John and the sister; the other brother had died unmarried and intestate during the progress of the trial below.

William Layne was born in Floyd County. He taught school until the year 1904, when he went to Washington, D. C., where he was employed as a clerk in the Census Bureau. He graduated in law and was admitted to the bar of the District of Columbia in 1921. It does not appear that he was active in practice, but at one time was assistant attorney for the Bureau of Indian Affairs. About two years before his death he was retired on pay.

In 1909 he married Annie Graves, and the two lived together in Washington until September, 1923, when the wife, by a court of the district, was adjudged to be of unsound mind, and committed to an institution for the mentally deficient, maintained by the government

for residents of the district. She was never restored, and at the time of trial, as the record shows, was a patient in the hospital.

On July 24, 1925, Mr. Layne executed a will bequeathing and devising all his property to his wife, naming her as executrix, to qualify if mentally restored at his death, but if not so, designating her sister Nellie Graves as executrix, with her sister as alternate. The latter qualified and was acting at the time of the institution of the two suits, the second being "statement of appeal" from the order probating the will in the Floyd county court. The will was probated in the District Court in March, 1936, and on April 27, 1936, in the Floyd county court. Mr. Layne's death occurred in Floyd County on October 18, 1935.

Following the ancillary probate of the will, and on October 17, 1936, Mrs. Fitzpatrick filed petition in equity in which she alleged that in 1934 her brother had conveyed to her the 19 acre tract of land; that the deed was delivered to the brother John to be delivered to her, but before "physical delivery or recordation the document was lost or restroyed." No consideration was alleged, but she stated that at the time the will was executed the wife was an inmate of the Washington hospital, "where she had been but a short time, and that decedent had hopes of her recovery, but thereafter he lost hope and believed that she would be a permanent inmate of the hospital * * * and decided to change the disposition of his property from that set out in said will; that after he had made up his mind to make the change, said will was stolen from his possession," later turned up and was probated. In her prayer she asks to be adjudged the owner of the 19 acre tract.

Following the filing of the petition by the sister, the brothers, Charles and John, and the sister, filed in the circuit court the "statement of appeal," naming the widow, and executrix, defendants. It was alleged that the probate by the Washington court was invalid, because the will was not proven in accordance with the law, this also as to the Floyd probate; that the document tendered was not the will of deceased, and lastly, the only ground upon which issue was submitted, that at the time of decedent's death he was a resident of Floyd County, hence the probate by the District court was void.

Later Mrs. Fitzgerald tendered an amended petition in support of her claim to the land, in which she said that following loss of the 1934 deed, set up in her original petition, and after William had learned of its loss or destruction, he executed another deed conveying the same land, and delivered it to his brother with directions to deliver it to her, and that John did deliver the deed. In her pleading she insists that title passed under the first deed, also under the second, but rather takes the position that the second was merely confirmatory of the first conveyance.

It was during completion of the pleadings that the court directed the two proceedings to be consolidated for the purpose of preparation, reserving the question as to whether they should be tried together. Later, before submission and after the completion of pleadings, the appeal from the order of probate was placed on the ordinary docket, the other suit being placed or remaining on the equity docket.

Following this plan of preparation the widow and executrix filed a joint pleading in answer to the petition and the appeal. In this the first paragraph was a categorical denial of the averments of the Fitzpatrick petition and the statement of appeal, admitting the allegations as to testator's death and the situation and condition of the widow.

They plead affirmatively that at the time of execution of the will, and the death of Mr. Layne, he was a bona fide resident of Washington; the execution of the will; its probate; the appointment of executrix and her appointment as committee of Mrs. Layne, the probate of the will in both jurisdictions; that the order of probate in Washington was in all respects legal and it had not been attacked in a court of that jurisdiction. They rely upon the will as vesting title to all property, real and personal, in the widow, and deny claim of title in Mrs. Fitzpatrick by virtue of the alleged deeds. There was also alternative plea setting up Mrs. Layne's dower rights in case the deeds or either of them be held good, it being pointed out that she did not sign or could not have legally signed either. They also plead that the brothers and sister of deceased had timely notice of the probating of the will in the District of Columbia, and made no objection or prosecuted appeal, hence estopped now to raise the question as to its validity. Their prayer

is that the appeal be dismissed, and the title to the tract of land be declared in the widow. Issues were properly joined by replicative pleadings. Proof in the "deed" case was taken by depositions, and in the "appeal" case both by deposition and orally.

The equity case was submitted first, and the chancellor adjudged that Mrs. Fitzpatrick was not the owner of the tract of land; dismissed the petitions, and quieted the widow's title. Following the entry of the judgment, and on April 15, 1939, the defendants filed in the appeal case what is styled "plea in abatement." They contendeded that Mrs. Fitzpatrick had, in October, 1936, filed her suit "for the same property and upon the same facts" set forth in the appeal case, and that proof was taken in the "deed" case when the appellants were present, and proof covered the same issues involved in the appeal case. In short, pleading abatement of the will appeal because the title to the property was determined in the equity suit. The court dismissed the plea in abatement, and due to our conclusions hereafter noted it is unnecessary to discuss the question as to whether his ruling was or was not proper.

At the following term of court proof in the will case was presented. No proof was introduced relating to the validity of the will, and the court instructed the jury that they should find "from the evidence the place of the legal residence of the deceased at the time of his death, whether in the City of Washington, D. C., or in Floyd County, Kentucky," and the jury returned the following verdict: "All the jury do agree that W. R. Layne at the time of his death had his legal residence in Washington, D. C.," and upon this verdict the court entered judgment in conformity.

Appeals are taken from both judgments on two transcripts, made up under the preparatory consolidating order, and each appeal involves factual questions, though there is injected into each case claimed technical errors which appellants contend should require us to reverse. We shall deal with what we have called the "deed" case first. The proof shows that William Layne prior to his death, even after his retirement from the government, made visits to Floyd County once or twice yearly, sometimes for the purpose of voting, particularly in presidential elections. Prior to the time he made the alleged first deed he had told relatives that his will

had been stolen from him, and he had decided to convey his real estate to the sister.

The proof is that the deed had been prepared in Washington. In discussing the matter with the brother John he had said that he owed his sister some money, and he "wanted to borrow some more." The deed was to make her safe, "and he went on to say that his wife was well provided for by the Government," and had little use for money. It was developed that the sister had a mortgage on the 19 acre tract to secure payment of a $200 loan. There is proof that decedent took the prepared deed from his trunk and gave it to John, and told him to deliver it to the sister, but it was destroyed under circumstances hereafter noted.

Later, and in 1935, it was in proof that William executed another deed, the brother John taking the acknowledgment, and it was sent to Florida by John; it was returned, not recorded, and later destroyed or lost. This deed was not, according to proof, actually delivered to the sister, and she testifies that she had never heard of William conveying the property to her until after his death, and she gives no reason for the conveyance, save that it was to make her already secured loan safe.

The brother John was also an attorney, and as such attended to business matters for the deceased. Corinne Jackson, a relative, said that she found the "first" deed on the floor torn in pieces; she gathered the pieces up and preserved them for a time and they disappeared. This deed was seen by several of the relatives who testified. There was no satisfactory evidence to support the charge that the will had been stolen.

Mrs. Fitzpatrick, who testified at length, says that in the summer of 1934 and 1935 she and the brother William both visited in Floyd County, remaining a month or more. The brother had stated to her that he intended for her to have the land "to make her safe for the money she had loaned." Notwithstanding her presence in Floyd County, she never learned of the deed until after the brother's death. Perhaps a point which influenced the chancellor in his conclusions was the attitude taken by John Layne, who first testified about seeing the deed, and its being handed to him to deliver to the sister. A month later he told counsel for appellees that he had not divulged the whole truth concerning the deed. He tes-

tified again and said that the brother (deceased) had asked two or three times about the deed, and he "put him off." On the third inquiry he told the brother that he had torn the deed up; the brother asked for the pieces and he gave them to him. William then said that he was glad that the deed had been torn up; that he had decided to "withdraw" it and sell the land, and that he was negotiating for its sale when he died.

There was no contradition of this testimony. The chancellor, under all the proof, may have well determined that the deed was not really handed to the brother for future delivery, and that if so delivered to his agent and attorney, William later revoked it. The sister was in Floyd County on the day that William displayed the deed to relatives. She was there in the fall or summer of 1935, and the brother and sister were together frequently in both 1934 and 1935. There are letters and documents in evidence that show scheming in some of the various transactions.

Prior to John's second deposition (1938), he had written to the executrix saying that he had a lease on the property, and had a contract with William to look after his business relating to real and personal estate. He mentioned the fact that William had given him the first deed to be delivered to the sister, and that William had told him that he was glad that the deed had not been delivered, because he did not want the sister to "come in possession of anything he had," because of his dislike for the sister's husband." His lease, or his claimed lease, on the property was to run till 1939. In his letter he proposed to surrender the lease for $300, coupled with a proposal that he furnish Mrs. Graves with an affidavit which would "put her in the clear," as to the estate. This letter was written while he was attempting to act as administrator of the estate of his deceased brother.

Counsel for appellant cite unquestioned authority to the effect that a deed in order to pass title need not be delivered directly to the grantee; passage occurs if the deed be executed and delivered to another with the express purpose that it be delivered to the grantee. Counsel cites the recent case of Hamilton v. Hamilton, 281 Ky. 5, 134 S. W. (2d) 959. In that case it was pointed out that the party holding the undelivered deed for delivery was acting as the agent of the grantee. Counsel also correctly says it is not necessary that a deed be re-

corded where same is duly executed and delivered, and the deed is destroyed by consent of the grantor, citing Sandy Land & Development Co. v. Brown, 175 Ky. 219, 194 S. W. 90, which holds that where a grantee accepts a deed it is his business to have it recorded, but his failure to do so will not divest him of title when there is delivery and acceptance.

There is no question here but that deceased sanctioned the destruction of the first deed before delivery. As to the alleged second deed, and we say ''alleged'' because there was a strong suspicion, at least on the part of the appellant and her husband, to whom the deed was sent (Florida) as to whether it was bona fide, and as we read the proof there was no acceptance by the grantee. She said it was read to her, but that she told the husband ''to do whatever he thought was right about it,'' and this was after she and others had testified that she knew nothing of the conveyance, until after the brother's death. The husband was suspicious because the brother, who was apparently acting as agent for deceased, had taken the acknowledgment and he makes it appear that the deed came to him after William's death, to be delivered on conditions, and accepted upon the payment of more than $300 to John.

From a strictly technical standpoint the undelivered deed was of no effect since the delivery, if any, was to the authorized agent of grantor. It was not given to the brother in escrow. He was the agent of deceased, and deceased had a right to recall or revoke. Suter v. Suter, 278 Ky. 403, 128 S. W. (2d) 704, and cases cited.

The general rule is as contended for by appellant, but our court and courts of other jurisdictions have held that there may be, under circumstances, revocation before actual delivery, recordation being one instance where it has been held that delivery is absolute, as is delivery to a third person for the benefit of an infant, which always raises the presumption that the conveyance was absolute, although a grantee may be in ignorance of the execution or delivery. Robbins v. Rascoe, 120 N. C. 79, 26 S. E. 807, 38 L. R. A. 238, 58 Am. St. Rep. 774. In the instant case the deed was delivered to the agent, not of the sister but the agent of the brother, without any knowledge on the part of the grantee, until after the death of William Layne, either of the fact that it had been executed or its delivery suggested.

In this state of case there is little doubt but that the grantor before acceptance could change his mind and cancel the deed. Conceding that the deed was made to make the sister "safe" on the loan, there is nothing to indicate that she would have accepted it, because of the fact that the wife of William was well taken care of in an asylum, and had no need of property; ordinary human reaction would have prompted her to say that she was satisfied with her mortgage security. The acceptance of a deed, like that of its delivery, is a matter of intention, to be determined by the acts and words, both of the grantor and grantee in relation thereto. Ward v. Rittenhouse Coal Co., 152 Ky. 228, 153 S. W. 217; Hardin v. Kazee, 238 Ky. 526, 38 S. W. (2d) 438, 440. In that case, quoting with approval a rule laid down in 8 R. C. L. p. 967, we said:

> "The intention of the parties is an essential element of delivery of a deed. It has been called the essence of delivery, and not only is often the determinative factor among other facts and circumstances, but is the crucial test where constructive delivery is relied upon. Categorically stated, the rule is that to the delivery of a deed it is essential that there be a giving by the grantor and a receiving by the grantee, with a mutual intention to pass the title from the one to the other; or, conversely, that it is sufficient when the deed is executed, and the minds of the parties meet, expressly or tacitly, in the purpose to give it present effect."

See Ward v. Rittenhouse Coal Co., supra; Bell v. Sandlin, 176 Ky. 537, 195 S. W. 1089.

All cases we have reviewed seem to carry out the idea that there must be some act on the part of the grantee to manifest acceptance; some act of ratification. Taking possession of the property may be strongly indicative. Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420, 65 S. W. 607. In Sullivan v. Sullivan, 179 Ky. 686, 201 S. W. 24, we held that a deed must be accepted to pass title, and while acceptance is a part of the delivery of the deed the acts which constitute the offer to deliver and the acceptance need not be simultaneous, and where a deed is delivered to a third party for the grantee, with the assent of the grantee, there is strong presumption of acceptance of the deed, which may be overcome by strong evidence. See Ratcliff's Guardian v. Ratcliff, 242 Ky.

419, 46 S. W. (2d) 504; Nunn v. Justice, 278 Ky. 811, 129 S. W. (2d) 564, wherein we said that generally the lodging of a deed for record would not operate as a delivery where knowledge or acceptance is not shown; we held a delivery complete in that case, because the daughters, grantees, were present when the deed was drawn, and later lodged for record.

Without carrying the discussion further, we are of the opinion that the grantor had the right to cancel or to agree to the destruction of the undelivered deed in the hands of his agent; that the second deed was never unconditionally delivered to or accepted by Mrs. Fitzpatrick, hence neither deed took the title from Mrs. Layne, vested in her under her husband's will.

Case No. 2, the will case: We do not find it necessary to go into detail of the proof leading to a judgment holding that the will was properly probated in the District of Columbia, following the verdict of the jury, which after the introduction of a mass of proof, rightfully decided that at the time of death William Layne was a resident of Washington City, nor to discuss with counsel for appellant the question of propriety of the instructions given by the court in submitting the issue.

The verdict of the jury was returned on April 28, 1939; the transcript was filed in our clerk's office August 12, 1940, more than one year after date of judgment. Section 4850, Ky. Stats., providing for appeals from a judgment of a county court, probating or rejecting a will, fixes the limit of appeals to the circuit court at five years, but specifically provides for appeal to this court within one year after final decision in the circuit court. There is presented a plea in bar or abatement and motion to dismiss for failure to file within the prescribed time. Notwithstanding appellant's counsel contends that this not not an appeal from a judgment admitting or rejecting a will, the time of appeal is regulated and controlled by this statute, since the action was on appeal from the circuit court directing the probate to stand.

We are constrained under the circumstances to sustain the motion or plea, and dismiss the appeal. We may add this, that we have carefully read the evidence in the will case, and find it so conclusive on the question that it is difficult for us to see how the jury could have returned a verdict other than the one upon which judg-

ment was rendered. District of Columbia v. Murphy and De Hart, 314 U. S. 441, 62 S. Ct. 303, 86 L. Ed. We also fail to find merit in the objections to the court's instructions as to the rules controlling the determination of residence.

We therefore conclude that the judgment in Fitzpatrick v. Layne, &c. (deed case), be affirmed, and appeal in Layne v. Layne (will case) be dismissed.