2008 WY 45

John G. **JENKINS** and Carol Voigt Jenkins and Johnson County Ranch Improvement # 1, LLC, a Wyoming limited liability company, Appellants (Defendants),

v.

Gerry **MILLER** and Marie L. Miller, Trustees of the Gerry and Marie Miller Living Trust, dated September 27, 2004, and Miller Sand Creek Ranch, LLC, a Wyoming limited liability company, Appellees (Plaintiffs).

No. S–07–0216.

Supreme Court of Wyoming.

April 14, 2008.

926

Before VOIGT, C.J., and GOLDEN, BURKE, JJ, and DONNELL, KAUTZ, D.JJ.

DONNELL, District Judge.

[¶ 1] Appellants, John G. Jenkins and Carol Voigt Jenkins ("Jenkins"), challenge the district court's grant of summary judgment in favor of Appellees, Gerry and Marie Miller ("Millers"), and *sua sponte* dismissal of Jenkins' counterclaim with respect to a private road easement. Millers had requested declaratory relief regarding an *Easement Deed* unilaterally recorded by Jenkins, the terms of which Millers disputed. Jenkins counterclaimed for a declaration that the same *Easement Deed* was valid and, further, that the parties were bound by an historical oral agreement for easement. The district court granted judgment in favor of Millers, concluding that Millers never accepted the *Easement Deed* and that there was no legally enforceable access to Millers' lands. The court further dismissed Jenkins' counterclaim on the grounds that Jenkins were precluded from seeking such declaratory relief, as the decision to pursue an easement rested only with Millers, as potential grantees/dominant estate owners. We reverse.

## ISSUES

■ Jenkins present the following issues for review:

1. What are the limits on the court's discretion to dismiss a claim for declaratory judgment without reaching the merits?

2. Does the license or easement holder have the exclusive right to pursue declaratory relief or pursue a statutory remedy?

3. Does *Walton v. Dana*, 609 P.2d 461 (Wyo.1980), bar the Appellants' mandatory counterclaim for declaratory relief?

4. Does the mere existence of a statutory procedure to condemn a private right-of-way under Wyo. Stat. Ann. §§ 24–9–101 through 24–9–104 (LexisNexis 2007) bar the owner of the servient estate from bringing a declaratory action?

5. Do material issues of fact preclude summary judgment as to whether the Appellees have an easement, irrevocable license, or a revocable license?

6. Are there factual issues as to whether the Appellees accepted the benefits of the agreement and subsequently the recorded Easement Deed?

■ Millers present similar issues for review:

1. Did the district court abuse its discretion in dismissing Appellants' Counterclaim for declaratory judgment?

2. Did the district court properly apply the holding in *Walton v. Dana* in dismissing Appellants' Counterclaim for declaratory judgment?

3. Does Appellees' Non–Acceptance of the Easement Deed and Corrective Easement Deed support the district court's grant of Appellees' Motion for Summary Judgment?

4. Does the district court's dismissal of Appellants' Counterclaim constitute harmless error?

5. Does the foundational principle of equity preclude Appellants from advocating for an irrevocable license?

1. On May 21, 2007, Millers filed a *Notice of Non–*

## FACTS

[¶ 4] Jenkins own certain lands located in Johnson County, Wyoming. Millers own adjacent lands and, historically, have accessed their property through Jenkins' property. This access occurred over various routes until the early 1980s, when Betty Jenkins, Jenkins' predecessor in interest, orally granted Millers a "permanent easement" in exchange for Millers relocating their route and constructing, at Millers' expense, a gravel lane along the west boundary of Jenkins' property. The parties agree that Millers and Betty Jenkins reached an agreement as to a permanent access easement though they dispute certain specific terms. Since that date, Millers have used this road ("the gravel road") to access their property.

[¶ 5] In 2004, Jenkins began considering a plan to subdivide their property for residential development. Jenkins invited Millers to be included in the development project; Millers declined. In any event, this project brought the issue of Millers' access to the forefront. On September 24, 2004, Jenkins unilaterally filed with the County Clerk of Johnson County, Wyoming, an *Easement Deed* reflecting a grant of easement to Millers. Jenkins contend that the purpose of the *Easement Deed* was "to confirm the historical permission which had been granted by the Jenkinses [sic] to the Millers." The *Easement Deed* described the location of the current gravel road and attached to Millers' land. However, the *Easement Deed* also limited the use of the road to ingress and egress for Millers' domicile and for agricultural purposes only; prohibited access to any dwellings on Millers' land other than Millers' single residence; and imposed obligations to repair and maintain the proposed easement. Finally, the *Easement Deed* restricted the width of the road to eighteen (18) feet.

[¶ 6] Millers, unhappy with these restrictions, which they claim were never agreed upon, notified Jenkins of their objection, first, by letter sent February 7, 2005, and, second, by filing a *Notice of Non–Acceptance of Easement* with the County Clerk of Johnson County, Wyoming, on April 21, 2005.[1]

*Acceptance of Corrective Easement Deed,* in re-

On March 27, 2007, Millers filed their *Complaint for Declaratory Judgment.* They sought a determination from the district court that they had not accepted the *Easement Deed* granted by Jenkins and that the Miller property was without legally enforceable access to a public road as contemplated by Wyo. Stat. Ann. §§ 24–9–101 through 24–9–104. Jenkins answered and filed a counterclaim for declaratory judgment, seeking the inverse, namely that the court

> declare the validity of the Easement Deed according to the terms of that deed as it was executed and recorded on September 24, 2004. The Counterclaimants ask the Court to declare that it is an appurtenant easement in full force and effect providing access to the Plaintiffs in accordance with the terms of the document.

On October 27, 2006, Millers moved for summary judgment; Jenkins objected. On May 21, 2007, the district court heard the matter and ruled from the bench. That ruling was memorialized in an *Order* dated July 9, 2007, which states, in part: ᐧ

> Plaintiffs are not required to come before this Court prior to petitioning the Board of County Commissioners for Johnson County for a private right of way pursuant to Wyoming Statute § 24–9–101 et seq.
>
> There are no genuine issues of material fact concerning Plaintiffs' Non–Acceptance on the Easement Deed, filed September 24, 2004.
>
> There are no genuine issues of material fact concerning Plaintiffs' Non–Acceptance of the Corrective Easement Deed, filed May 16 [sic], 2007.
>
> The unilateral Easement Deed, filed September 24, 2004, and the Corrective Easement Deed, filed May 16 [sic], 2007, are null and void for lack of acceptance by Plaintiffs.
>
> Plaintiffs' Motion for Summary Judgment on non-acceptance of the unilateral Easement Deed, filed September 24, 2004, and unilateral Corrective Easement Deed, filed May 16 [sic], 2007, should be granted, as Defendants have not demonstrated any

> genuine issues of material fact concerning non-acceptance of the purported easement, and Plaintiffs are entitled to a judgment as a matter of law.
>
> Plaintiffs' Motion for Summary Judgment on absence of legally enforceable access to Plaintiffs' lands should be granted, as Defendants have not demonstrated a genuine issue of material fact concerning the lack of legally enforceable access, and Plaintiffs are entitled to a judgment as a matter of law.
>
> Defendants' Counterclaim for a declaratory judgment should be dismissed because the right to pursue an easement rests exclusively with the petitioners, and Defendants are precluded from bringing a declaratory judgment action.

Thus, the district court voided the *Easement Deed* and *Corrective Easement Deed;* declared Millers without legally enforceable access to their lands; and dismissed Jenkins' counterclaim. This timely appeal followed.

### ANALYSIS

While the parties present several issues for review, this Court need consider only two: first, whether the district court erred in granting Millers' motion for summary judgment to declare the *Easement Deed* null and void and to declare Millers without legally enforceable access to their lands; and, second, whether the district court erred in dismissing, *sua sponte,* Jenkins' counterclaim for declaratory judgment on the grounds that Jenkins were precluded from bringing an action to enforce an easement or to determine the validity of an alleged easement.

### I. *Grant of Millers' Motion for Summary Judgment*

[¶ 10] The Court first considers the district court's decision to grant summary judgment in favor of Millers. The district court's decision was two-fold: first, that there were no genuine issues of material fact with respect to Millers' "nonacceptance" or rejection of the *Easement Deed* such that the *Easement Deed* was null and void and, second,

sponse to Jenkins' filing of *Corrective Easement* *Deed* on May 15, 2007.

that Millers were without legally enforceable access to their lands.

### A. Standard of Review

[¶ 11] "When reviewing an order granting a summary judgment motion, we consider the record *de novo.*" *Hincks v. Walton Ranch Co.,* 2007 WY 12, ¶ 7, 150 P.3d 669, 670 (Wyo.2007) (citing *Knapp v. Landex Corp.,* 2006 WY 36, ¶ 7, 130 P.3d 924, 926 (Wyo.2006)).

### B. Consideration of the *Easement Deed,* the *Corrective Easement Deed,* and Underlying Legally Enforceable Access

[¶ 12] In specifically addressing the *Easement Deed* and the "unilateral easement" recorded by Jenkins, the district court stated:

> [The] Court does not believe there is a material question of fact as to the acceptance of this unilateral agreement. Based on that narrow area of law and question, there is no question of fact. Therefore, the Court rules that the unilateral easement that was filed by Jenkins and the corrective easement is null and void, having been unaccepted by the Millers, and that based upon the reasons cited above, the Millers are not required to come to this court to enforce a potential oral agreement or easement or irrevocable license before they go to the county commissioners.

[¶ 13] "An easement is an interest in real property that is covered by the statute of frauds," *Turner v. Floyd C. Reno & Sons, Inc.,* 696 P.2d 76, 77 (Wyo.1985) (internal citations omitted), meaning that, unless some exception to the statute of frauds applies, the easement must be in writing to be effective.[2] As a natural corollary, "[a] grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." 28A C.J.S. *Easements* § 57 (1996). As such, Wyoming law holds that Millers, as grantees, must "accept" the offered easement as proposed by Jenkins for that easement to be valid and binding:

> **There are two essential elements to a legally binding delivery: 1) transferring possession of the deed by the grantor, and 2) acceptance of the deed by the grantee.**
>
> . . . .
>
> " * * * The requisites of acceptance are the grantee's knowledge of delivery or tender of the deed, **an intention to take the legal title to the property which the deed purports to convey,** and the manifestation of such intention by some act, conduct, or declaration. * * *
>
> "Acceptance is primarily a matter of the grantee's intention; hence the significant inquiry is as to his intention as manifested by his words and acts. Express words and positive acts are not necessary; intention to accept may be inferred from such conduct as retaining possession of the deed, conveying or mortgaging the property, recording the deed, or otherwise exercising the rights of an owner * * *." 23 Am. Jur.2d, Deeds § 175, p. 196 (1983).
>
> . . . .
>
> **The "acceptance" of a deed, like that of its delivery, is a matter of intention, to be determined by acts and words of**

---

2. Wyoming's statute of fraud provides:

(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof;

(ii) Every special promise to answer for the debt, default or miscarriage of another person;

(iii) Every agreement, promise or undertaking made upon consideration of marriage, except mutual promise to marry;

(iv) Every special promise by an executor or administrator, to answer any demand out of his own estate;

(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year;

(vi) To charge any person upon, or by reason of a representation or assurance concerning the character, conduct, credit, ability, trade or dealings of another, to the intent or purpose that such other may obtain thereby, credit, money or goods.

Wyo. Stat. Ann. § 1–23–105 (LexisNexis 2007).

both the grantor and grantee. *Fitzpatrick v. Layne*, 291 Ky. 523, 165 S.W.2d 13, 17 (1942). The delivery of a deed is the act by which the grantor divests himself, and the acceptance of the deed is the act by which the grantee vests himself with title to the property.

*B–T, Ltd. v. Blakeman*, 705 P.2d 307, 312–13 (Wyo.1985) (emphasis added).

[¶ 14] Here, Millers argued that their February 7, 2005 letter and April 21, 2005 *Notice of Non–Acceptance of Easement Deed* were sufficient to demonstrate rejection of the September 24, 2004 *Easement Deed* and, thus, to invalidate it. Jenkins argued that genuine issues of material fact precluded a determination as to Millers' acceptance or rejection of the *Easement Deed* and/or any underlying easement. The district court agreed with Millers and concluded that they had not accepted the *Easement Deed*.

[¶ 15] In favor of Millers, the facts demonstrate that their February 7, 2005 letter and April 21, 2005 *Notice of Non–Acceptance of Easement Deed* express an intent to reject the *Easement Deed*. On the other hand, the record reveals that Millers, apparently in an attempt to have it both ways, continued their use of the gravel road, which use had continued consistently for over twenty years. Clearly, this continued use was inconsistent with their denial of any prior agreement and their assertion that they did not have and never had any legally enforceable right to use the road. Further, Millers delayed more than four months before their first notification of their rejection of the *Easement Deed*. Again, this calls into question their stated intent. Clearly, the record could support a conclusion in favor of either party at this point. Where there are genuine issues of material fact concerning Millers' intent and acceptance of the *Easement Deed*, the district court erred in granting summary judgment. *See, e.g., Hasvold v. Park County Sch. Dist. No. 6*, 2002 WY 65, ¶ 24, 45 P.3d 635, 640 (Wyo.2002).

[¶ 16] More importantly, the parties, the district court, and this Court recognize that this litigation involved more than just the *Easement Deed* or *Corrective Easement Deed*; rather, "both parties asked the [district] court to declare the rights and status of Millers' access in light of the Easement Deed **or other legally enforceable access.**" (Emphasis added.) In this respect, Millers' declaratory judgment claim overlapped Jenkins' declaratory judgment counterclaim, which sought a declaration as to the validity of the underlying appurtenant easement agreement allegedly reflected in the *Easement Deed*. Thus, the district court also was asked to determine whether Millers had *any* legally enforceable access, which request would encompass possibilities such as an irrevocable license or an oral easement falling outside the statute of frauds.

[¶ 17] Even had this Court concluded that the district court appropriately granted summary judgment as to the effect of the *Easement Deed*, it is one thing to say that Millers timely and appropriately rejected the *Easement Deed*, but quite another to say that they had no legally enforceable access to their lands when there was, arguably, an oral easement or irrevocable license that they historically had accepted. Indeed, the parties concede a process of negotiation whereby Millers and Betty Jenkins agreed to locate the gravel road in its current location in exchange for a grant of a "permanent easement." This *status quo* existed for almost three decades before Millers decided that the gravel road no longer served their best interests.

[¶ 18] Where reasonable inferences drawn from the parties' statements and actions create genuine issues of material fact as to the terms of an agreement, summary judgment is inappropriate. *See Ewing v. Hladky Constr., Inc.*, 2002 WY 95, ¶ 11, 48 P.3d 1086, 1088 (Wyo.2002); *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 216 (Wyo.2000). Given the debatable state of the record, summary judgment was inappropriate as to the issue of whether Millers are without legally enforceable access to a public road and whether, if some sort of easement or license is in effect, what the precise terms and conditions of that access are. The district court erred in its grant of summary judgment.

## II. Dismissal of Jenkins' Counterclaim for Declaratory Judgment

[¶ 19] Next, we address the district court's *sua sponte* dismissal of Jenkins' coun-

terclaim for declaratory judgment. The court dismissed the counterclaim, stating that "the right to pursue an easement rests exclusively with the petitioners, and Defendants are precluded from bringing a declaratory judgment action."

### A. Standard of Review

[¶ 20] Review of the dismissal of a counterclaim is *de novo.* "This Court evaluates the propriety of a dismissal by employing the same standards and by examining the same material as the district court, without a presumption of correctness to the conclusions reached below." *Askvig v. Wells Fargo Bank Wyo., N.A.,* 2005 WY 138, ¶ 11, 121 P.3d 783, 787 (Wyo.2005) (internal citation omitted). We have addressed the standard of review regarding *sua sponte* dismissals:

> *Sua sponte* motions to dismiss a complaint are recognized in Wyoming and upheld when the proper procedure is followed. *Osborn v. Emporium Videos,* 848 P.2d 237, 241–42 (Wyo.1993). According to our standard of review, we will sustain a dismissal of a [counterclaim] by a trial court only if it shows on its face that the [counterclaimant] was not entitled to relief under any set of facts. In considering such a motion, the "facts alleged in the [counterclaim] are admitted and the allegations must be viewed in the light most favorable to [counterclaimant]." Dismissal is a drastic remedy and is sparingly granted. *Cranston v. Weston County Weed and Pest Bd.,* 826 P.2d 251, 254–255 (Wyo. 1992); *Matter of Paternity of JRW,* 814 P.2d 1256, 1259 (Wyo.1991) (quoting *Mostert v. CBL & Associates,* 741 P.2d 1090, 1092 (Wyo.1987) (citations omitted)).

*Jackson v. Jackson,* 961 P.2d 393, 395 (Wyo. 1998).

### B. Propriety of Dismissal of Counterclaim: A Grantor's Right to Declaratory Judgment Regarding the Validity of an Easement

#### i. *Procedure for Sua Sponte Dismissal*

[¶ 21] Here, the district court dismissed, *sua sponte,* Jenkins' counterclaim for

declaratory relief. *Sua sponte* dismissals require adherence to a specific procedure:

> The leading federal decision on *sua sponte* dismissals under F.R.C.P. 12(b)(6) is *Tingler v. Marshall,* 716 F.2d 1109 (6th Cir.1983). The *Tingler* court reviewed the *sua sponte* dismissal of a complaint on its merits, so federal jurisdiction was not in question. The court found four reasons why a *sua sponte* dismissal under F.R.C.P. 12(b)(6) is not favored. First, the action places the court in the role of a proponent rather than an independent observer. Second, plaintiffs are prejudiced because, unlike when a motion to dismiss is filed by a defendant, the plaintiff is given no opportunity to amend the complaint or make legal arguments against dismissal. Pro se plaintiffs, unskilled in legal pleadings, are more likely to suffer acute prejudice. Third, dismissal without service of process and notice is unfair to defendants because the *sua sponte* action of the court deprives the defendants of the opportunity to participate in the litigation process and places them in the position of having to chose: whether to not participate in an appeal and risk an adverse decision; or, whether to participate in the appeal and make arguments based upon matters not in the factual record. Fourth, the *sua sponte* dismissal ultimately wastes judicial resources. The dismissal creates an opportunity for appeal based upon an incomplete record of pleadings and orders resulting in an inability to make a factual decision on the merits and limiting the appellate court to decisions on broad legal grounds. *Tingler,* 716 F.2d at 1111.

> Using its supervisory power, the *Tingler* court outlined a five-step procedure for dismissal of complaints, *sua sponte:*

> **(1) allow service of the complaint upon the defendant; (2) notify all parties of [the court's] intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal; (4) give the de-**

fendant a chance to respond or file an answer or motions; and (5) if the claim is dismissed, state [the court's] reasons for the dismissal.

*Id.* at 1112.

In an exercise of this court's supervisory powers, Wyo. Const. art. 5, § 2, **we adopt the federal approach to** *sua sponte* **dismissals under Rule 12(b)(6) including the five-step process outlined in** *Tingler.* This process assures proper notice and opportunity to be heard, *see Torrey v. Twiford,* 713 P.2d 1160 (Wyo.1986), and promotes a policy of deciding cases on their merits which is consistent with the general tenor of our procedural rules. *See Hill v. Zimmerer,* 839 P.2d 977, 981 (Wyo. 1992). Restricting *sua sponte* dismissals is also consistent with the requirement of the Wyoming Constitution to maintain an open court system:

*Osborn v. Emporium Videos,* 848 P.2d 237, 241–42 (Wyo.1993) (emphasis added and footnote omitted).

[¶ 22] The district court failed to follow this procedure. As a matter of course, then, this matter must be remanded to the district court with directions to follow the procedural steps outlined in *Osborn. Id.; see also Jackson,* 961 P.2d at 395.

> ii. *Consideration of Whether Jenkins, as Grantors, are Precluded from Bringing a Declaratory Judgment Action*

■ [¶ 23] The decision to remand this case based on the district court's improper grant of summary judgment as to Millers' declaratory judgment action does not address the propriety of the district court also dismissing Jenkins' counterclaim. The district court dismissed Jenkins' counterclaim in reliance on *Walton v. Dana,* 609 P.2d 461 (Wyo.1980), and the court's interpretation of that case as precluding Jenkins from seeking a declaratory judgment. Specifically, the court concluded that "Defendants' Counterclaim for a declaratory judgment should be dismissed because the right to pursue an

easement rests exclusively with the petitioners, and Defendants are precluded from bringing a declaratory judgment action." Because we anticipate that the same substantive issue will arise on remand, it is appropriate to address the district court's conclusions at this time.

[¶ 24] Historically, Wyoming's law concerning private roads and easements has been less than clear. However, this Court has clarified that "landlocked" property owners cannot be forced to pursue legal remedies, such as a common law way of necessity or an implied easement, prior to seeking a private road pursuant to Wyoming's private road statutes, Wyo. Stat. Ann. §§ 24–9–101 through 24–9–104. *See Miller v. Bradley,* 4 P.3d 882, 887 (Wyo.2000) ("Section 24–9–101 contains no requirement that other forms of relief be pursued prior to seeking the relief available under its provisions"); *Lindt v. Murray,* 895 P.2d 459, 462 (Wyo.1995); *Walton,* 609 P.2d at 463–64.

[¶ 25] The district court used this rule of law, combined with its conclusion that Millers lacked legally enforceable access to their lands, in holding that Jenkins were without authority to seek a declaratory judgment regarding the easement. We agree with the district court's conclusion that Millers should be allowed to proceed with a private road proceeding where there is "no *presently existing* outlet to or connection with a public road[.]" *Miller,* 4 P.3d at 887 (emphasis in original).[3] But this is not the case with which the court was presented nor can this rule of law logically extend to the conclusion reached by the district court.

[¶ 26] The Uniform Declaratory Judgments Act ("the Act") authorizes Wyoming courts to "declare rights, status and other legal relations whether or not further relief is or could be claimed." Wyo. Stat. Ann. § 1–37–102 (LexisNexis 2007). Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2007) states,

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status

---

**3.** Presently existing legally enforceable access is different from *potential* legally enforceable access. The former apparently requires previous

adjudication as to the legal enforceability of the access.

or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

*See also* Wyo. Stat. Ann. § 1–37–107 (Lexis-Nexis 2007). The purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to legal relations, and is to be liberally construed and administered." Wyo. Stat. Ann. § 1–37–114 (Lexis-Nexis 2007).

▉▉▉▉ [¶ 27] "A declaratory judgment action may be brought to determine the right to an easement, or determine the relative rights of parties affected by an easement, or whether an easement has been created." 22A Am.Jur.2d *Declaratory Judgments* § 156 (2003).[4] Nothing in the Act, Wyoming's private road statutes, or Wyoming law dictates that the owner of a servient estate is precluded from seeking declaratory relief as to the validity or establishment of an easement or as to the rights of parties surrounding a disputed easement. This Court has said repeatedly that Wyoming is concerned about making the private road process an economic and convenient one for landlocked property owners and, thus, does not *require* those individuals to seek an adjudication of other potential means of legally enforceable access prior to proceeding into the private road process where that access is not "presently existing." *See, e.g., Wagstaff v. Sublette County Bd. of County Comm'rs*, 2002 WY 123, ¶ 12, 53 P.3d 79, 82–83 (Wyo.2002); *Martens v. Johnson County Bd. of Comm'rs*, 954 P.2d 375, 380 (Wyo.1998) ("[W]e have noted that the legislature intended the procedure under the statute to provide in a local forum a readily available, economically af-

fordable, and time efficient method to obtain a means of access to property"); *McGuire v. McGuire*, 608 P.2d 1278, 1288 (Wyo.1980). However, Wyoming also recognizes the rights of property owners whose lands will be subjected to the imposition of private roads. Such property owners should have the right to determine the status of alleged or potential existing legally enforceable access through their lands even where those rights have not yet been adjudicated and, hence, are not "presently existing."[5] To hold that *Walton v. Dana* precludes the exercise of a right that clearly exists pursuant to the Act simply goes too far. Jenkins were entitled, either as plaintiffs bringing a claim or defendants bringing a counterclaim, to have the district court adjudicate their legal rights relative to the disputed but potential legally enforceable access. The court erred in dismissing their counterclaim.

## CONCLUSION

[¶ 28] The district court erred in granting summary judgment to Millers, both in its determination that there were no issues of fact regarding Millers' acceptance of the *Easement Deed* and in its conclusion that there were no issues of fact regarding Millers' lack of legally enforceable access to their lands. The district court further erred in dismissing Jenkins' counterclaim on the grounds that Jenkins, as alleged grantors of an easement, were without authority to seek a declaratory judgment as to the validity of that easement or their rights thereunder. This matter is reversed and remanded to the district court for further proceeding consistent herewith.

4. "The owner of the servient estate may seek a declaration of the scope of use of an easement, or may seek protection against misuse of the servitude, in tort, and seek extinguishment of an easement for excessive use. The servient owner also can bring an action for negligence and wrongful entry, alleging misuse of easement." 25 Am. Jur.2d *Easements and Licenses* § 109 (2004).

5. To preclude a servient estate landowner from seeking declaratory relief would have the effect

of denying him any reliance upon an easement he believed to be binding. In other words, a landowner with a potentially enforceable easement could decide he simply no longer preferred that route and, instead, seek a private road. This Court has emphasized that "a landlocked landowner is not entitled to seek whatever road he desires or is most convenient to him." *Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 291 (Wyo. 1991).