2007 WY 74

Robert H. HICKS and Pronghorn Publishing, Inc. a Wyoming corporation, individually and ex rel., Board of Trustees of the Scenic Preserve Trust, Appellants (Plaintiffs),

v.

Fred L. DOWD and Linda S. Dowd; and the Board of Johnson County Commissioners, Appellees (Defendants).

No. 06–2.

Supreme Court of Wyoming.

May 9, 2007.

Representing Appellants: Dennis M. Kirven of Kirven and Kirven, P.C., Buffalo, Wyoming.

Representing Appellees Fred L. and Linda S. Dowd: Tom C. Toner of Yonkee & Toner, LLP, Sheridan, Wyoming.

Representing Appellee Board of Johnson County Commissioners: Greg L. Goddard, Deputy County Attorney, Buffalo, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   The members of the Board of County Commissioners of Johnson County (the Board) serve as the trustees of the Scenic Preserve Trust of Johnson County.  On August 6, 2002, the Board acted to terminate a conservation easement held by the Scenic Preserve Trust.  On July 14, 2003, Appellants Robert H. Hicks and Pronghorn Publishing, Inc. (Appellants) filed a "Complaint for Declaratory Judgment, Mandamus Relief, Breach of Fiduciary Duties and Constructive Trust."  Appellants' complaint challenged the Board's August 6, 2002, actions.  In resolving this dispute, the district court first found that there was no violation of Wyoming's open meetings law.  Later, concluding that it lacked subject matter jurisdiction, the district court dismissed the remainder of Appellants' claims.  The district court ruled that the claims were barred because Appellants did not file a timely petition for review of the Board's action, pursuant to W.R.A.P. 12.  We will affirm, but for reasons other than those used by the district court.  We conclude that Appellants lack standing to maintain an action to enforce the Scenic Preserve Trust.

## ISSUES

[¶ 2]   Appellants present these six issues for our review:

A.   Must plaintiffs exhaust all administrative remedies prior to challenging Johnson County's authority to extinguish a conservation easement granted to the county?

B.   Does a violation of the public meeting law void the attempted extinguishment and conveyance of the conservation easement and one acre of property to Dowd?

C.   Does Wyoming charitable trust law prohibit the extinguishment of a conservation easement without prior judicial approval?

D.   Did the trustees of the scenic preserve trust breach their fiduciary duties as a matter of law by attempting to extinguish and convey trust land to Dowd?

E.   Should the district court have imposed a constructive trust on the lands under the conservation easement on behalf of the public?

F.   Is the transfer of public property to a private person without compensation a violation of the Wyoming Constitution, Article 3, Section 36 or Article 26, Section 6?

[¶ 3]   In their brief, Appellees Fred and Linda Dowd raise a number of issues, including the following issue, which we find dispositive:

Does Hicks have standing as a beneficiary of a charitable trust to challenge the Board of County Commissioners' action terminating the conservation easement?

[¶ 4]   In their reply brief, Appellants present this argument:

Plaintiffs have standing to present matters of substantial public interest and importance.

## FACTS

[¶ 5]   The case arises from a conservation easement on Meadowood Ranch in Johnson County.  The conservation easement was established in 1993.  At that time, Meadowood Ranch,[1] which contains approximately 1,043 acres, was owned by the Lowham Limited Partnership, the predecessor in interest to Appellees Fred and Linda Dowd (the Dowds).  In 1993, Paul Lowham, one of the principals of the Lowham Limited Partnership, approached the Board of County Commissioners of Johnson County (the Board)

---

* Chief Justice at time of oral argument.

1.   The Ranch is now known as C Bar B Ranch. For the sake of simplicity, we will refer to the property as Meadowood Ranch.

about placing a conservation easement on Meadowood Ranch.

[¶ 6] On December 21, 1993, the Board of County Commissioners of Johnson County (the Board) adopted Resolution No. 145, which was entitled "Scenic Resources Resolution." The resolution established the "Scenic Preserve Trust" and provided:

Johnson County contains many areas with specific qualities that should be preserved in as close to their natural state or their current state as possible. Such qualities are known as scenic resources. Scenic resources encompass all attributes of the landscape from which visually defined values arise including but not limited to topography, rock outcrops, vegetation, lakes and streams, panoramic view, and wildlife.

. . . .

In the interest of protecting the public health, safety and welfare; in the interest of protecting Johnson County's priceless environmental quality and scenic beauty; in the interest of maintaining and enriching the human environment for both residents and visitors to Johnson County; and in the interest of maintaining and enhancing Johnson County's economy, of which the tourism section is prominent, the Board of County Commissioners believes it advisable to establish a scenic preservation trust.

Section 4: *Establishment of Scenic Preserve Trust.*

The Board of County Commissioners hereby establishes the Scenic Preserve Trust of Johnson County, Wyoming (hereinafter referred to as the "Trust") as the entity in which real Trust Property Rights are vested and maintained according to this resolution.

Section 5: *Purpose.*

The Trust shall be the repository for Trust Property Rights for Johnson County, Wyoming, for the purpose of preserving and enhancing the scenic resources of Johnson County.

. . . .

Section 6: *Board of Trustees.*

The Trust shall be governed by a Board of Trustees. The members of the Board of Trustees shall be the members of the Board of County Commissioners of Johnson County.

Section 7: *Acquisition of Interests in Real Property.*

a. The Trust may acquire by purchase, gift, devise or bequest title to, or any interest in, or rights in real property, including land and water, that will cause the County's scenic resources to be preserved in accord with the purposes of this resolution. (All such rights herein referred to as "Trust Property Rights").

b. The Trust Property Rights which constitute the assets of the Trust may be fee simple title to such property, scenic easements in such property, development rights of such property, or such other less-than-fee interests in such property as are consistent with the purposes of this resolution.

Resolution 145 became effective on the date of its adoption, December 21, 1993.

[¶ 7] On December 29, 1993, the Lowham Limited Partnership executed a "Deed of Conservation Easement and Quit Claim Deed." The deed transferred to the Board a one-acre tract of Meadowood Ranch, as well as a conservation easement over the ranch. The conservation easement was intended to "preserve and protect in perpetuity the natural, agricultural, ecological, wildlife habitat, open space, scenic and aesthetic features and values of the Ranch." The grantors expressed their intent that the conservation easement be maintained in perpetuity unless "unforeseeable circumstances" made the continuation of the conservation easement impossible. The conservation easement prohibited the "removal of minerals, hydrocarbons, and other materials on or below the surface of the land." On April 15, 1997, the Board quitclaimed the one-acre parcel of Meadowood Ranch to the Scenic Preserve Trust of Johnson County, "subject to any easements or rights-of-way that have been legally acquired."

[¶ 8] On February 1, 1999, the Lowham Limited Partnership sold Meadowood Ranch to the Dowds. The Dowds took the property

subject to the conservation easement. In 2001, coal bed methane development was contemplated by a company that owns mineral interests underlying Meadowood Ranch. As a result, in June of 2002, the Dowds requested that the Board terminate the conservation easement. The Dowds asserted that coal bed methane development was unpreventable, unanticipated, and inconsistent with the terms of the conservation easement. The Dowds proposed that the conservation easement could be extinguished if the Board sold them the one-acre parcel and the conservation easement.

[¶ 9] On August 6, 2002, the Board, at a regularly scheduled meeting, took action to extinguish the conservation easement on Meadowood Ranch. First, the Board adopted Resolution No. 257. The resolution authorized the Board to execute a quitclaim deed that would transfer the one-acre parcel and conservation easement to the Dowds. The resolution referred to coal bed methane development on Meadowood Ranch, noting that such development was inconsistent with the purposes of the conservation easement. Next, the Board executed a "Quitclaim Deed," which transferred to the Dowds the one-acre tract and the conservation easement over Meadowood Ranch. The deed stated that the conservation easement over Meadowood Ranch was "extinguished and terminated." As part of the transfer, the Dowds agreed to "indemnify and hold harmless the Board and the County." As far as the record shows, there was no W.R.A.P. 12 Petition for Review of any of the actions taken by the Board on August 6, 2002.

[¶ 10] Appellant Robert Hicks is a resident of Johnson County. In addition to owning lands in Johnson County, Mr. Hicks owns Pronghorn Publishing, which publishes the Buffalo Bulletin, a newspaper of general circulation throughout Johnson County. A reporter from the Buffalo Bulletin attended the Board meeting held on August 6, 2002. Public notice of the meeting was published in the Buffalo Bulletin on August 22, 2002.

[¶ 11] Approximately ten months later, Appellants began this litigation. On June 3, 2003, Appellants filed a notice of governmental claim. On July 14, 2003, Appellants filed a "Complaint for Declaratory Judgment, Mandamus Relief, Breach of Fiduciary Duties and Constructive Trust."

[¶ 12] In the complaint, Appellants first alleged that the actions taken by the Board on August 6, 2002, violated the Wyoming Public Meetings Act, rendering the Quitclaim Deed void. Second, Appellants sought a writ of mandamus to require the Board to rescind the Quitclaim Deed, as a "violation of the Board's fiduciary duties and in violation of the terms of the conservation easement." Appellants alleged that the Conservation Easement could not be extinguished until it was judicially determined that unforeseeable circumstances made the continuation of the easement impossible. Third, Appellants claimed that the Board members had breached their fiduciary duties as trustees of the Scenic Preserve trust by failing to transfer trust property in exchange for property of at least equal market value. Appellants sought a declaration that the quitclaim deed is null and void. Appellants also sought a judgment in favor of the Scenic Preserve Trust. In the alternative, Appellants requested that a constructive trust be imposed on Meadowood Ranch, to compensate for extinguishment of the conservation easement.

[¶ 13] The Board and the Dowds answered the complaint. Both answers asserted that Appellants lacked standing to pursue this litigation. Later, the Dowds filed a motion for summary judgment. Appellants opposed the Dowds' motion for summary judgment and filed their own motion for summary judgment. In opposing Appellants' motion for summary judgment, the Dowds provided briefing to support their assertion that Appellants lack standing to enforce the terms of the Scenic Preserve Trust. In response, Appellants contended that their standing should be recognized because this matter involves issues of substantial public interest and importance.

[¶ 14] On April 12, 2004, the district court denied the motions for summary judgment. In its "Order Denying Motions for Summary Judgment," the district court made a number of findings. First, the district court found that the conservation easement was transferred to a charitable trust, the Scenic Pre-

serve Trust of Johnson County. Second, citing Wyo. Stat. Ann. § 4–10–103, the district court found that "the conservation easement was granted and accepted for the benefit of Wyoming citizens, so a Johnson County resident, including Mr. Hicks, is a beneficiary and has standing." Next, the district court found that, under Title 4 of the Wyoming Statutes, the district courts "have exclusive jurisdiction concerning administration of charitable trusts and under Wyoming Administrative Procedures Act appeal is not required before requesting the Court to adjudicate controversies concerning charitable trusts." In addition, the district court found that there was no violation of the open meetings law. (Although the district court's order was styled as an order denying summary judgment, this resolved this claim.) Finally, the district court found that Wyo. Stat. Ann. § 4–10–110 (LexisNexis 2005) [2] "recognizes that the Wyoming Attorney General has a right to act as a beneficiary with respect to charitable trusts." The district court ordered the parties to notify the Wyoming Attorney General's Office of the action, to afford the Attorney General an opportunity to intervene in this action.

[¶ 15] The Attorney General was notified of the action. On May 3, 2004, the Attorney General responded to the notice, writing that the

Attorney General's Office does not need to intervene in this matter. The issues are squarely before the Court and the interests of the public, as the beneficiaries of the conservation easement at issue here, are being represented by arguments of counsel on all sides.

The Attorney General has not participated in this appeal. The case was set for trial.

[¶ 16] Before trial, however, the Dowds filed a motion to dismiss the remaining claims for lack of subject matter jurisdiction. The Dowds argued that because Appellants were claiming to be aggrieved or adversely affected by the Board's actions of August 6,

2002, Appellants' remedy was to file a petition for review of agency action pursuant to W.R.A.P. 12. Because Appellants did not file a petition pursuant to W.R.A.P. 12, the Dowds contended that the remaining three causes of action (writ of mandamus, breach of fiduciary duties, and constructive trust) should be dismissed for lack of subject matter jurisdiction. After a telephonic hearing, the district court, reversing its earlier decision, dismissed the remaining claims for lack of subject matter jurisdiction. In its order, the district court adopted the Dowds' argument and ruled that the remaining claims were barred because Appellants did not file a W.R.A.P. 12 petition for review of agency action. This timely appeal followed.

## DISCUSSION

[¶ 17] Although the district court dismissed this action due to lack of subject matter jurisdiction due to failure to file a W.R.A.P. 12 petition for review, we believe this case is more properly resolved on a different, but equally important, jurisdictional ground. We conclude that Appellants lack standing to enforce the Scenic Preserve Trust.

[¶ 18] We find it appropriate to decide this matter on standing grounds for a number of reasons. Standing is a "jurisprudential rule of jurisdictional magnitude." *Jolley v. State Loan and Inv. Bd.*, 2002 WY 7, ¶ 6, 38 P.3d 1073, 1076 (Wyo.2002); *see also Washakie County School Dist. No. One v. Herschler*, 606 P.2d 310, 316 (Wyo.1980) ("Standing is a jurisdictional issue.") It is axiomatic that the existence of subject matter jurisdiction is a question of law that can be raised at any time. *Granite Springs Retreat Ass'n, Inc. v. Manning*, 2006 WY 60, ¶ 5, 133 P.3d 1005, 1009–10 (Wyo.2006); *Mutual of Omaha Ins. Co. v. Blury–Losolla*, 952 P.2d 1117, 1119–20 (Wyo.1998). In addition, the standing issue was considered in the district court, and the Dowds and the Appellants have provided appellate briefing on the

2. **Wyo. Stat. Ann. § 4–10–110. Others treated as qualified beneficiaries.**

. . . .
(d) The attorney general of this state may exercise the rights of a qualified beneficiary with

respect to a charitable trust having its principal place of administration in this state by notifying the trustee by written notice.

issue. Under the circumstances, we believe it appropriate to resolve this matter on this ground.

[¶ 19] The district court found that the Scenic Preserve Trust is a charitable trust. Charitable trusts are recognized in Wyoming, both in case law and statute. *See Town of Cody v. Buffalo Bill Memorial Ass'n*, 196 P.2d 369, 377, 64 Wyo. 468 (Wyo. 1948). Wyoming's Uniform Trust Code includes the following provision regarding charitable trusts:

> Wyo. Stat. Ann. § 4–10–406. Charitable purposes; enforcement.
>
> (a) A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community.

[¶ 20] In their brief, Appellants do not challenge the district court finding that the Scenic Preserve Trust is a charitable trust. Instead, they agree that the Scenic Preservation Trust is a charitable trust, whether under common law principles or under current statutory law. Given the district court's unchallenged finding, we must agree that the Scenic Preserve Trust is a charitable trust.

[¶ 21] We also conclude that Appellants' action is one to enforce the Scenic Preserve Trust. Appellants' claims are based on (1) the Board's alleged violations of the terms of the Scenic Preserve Trust itself, and/or (2) the Board's alleged violations of the terms of the conservation easement held by the Scenic Preserve Trust. Implicit in Appellants' claims is that the Scenic Preserve Trust is bound by the terms of the conservation easement.[3] *See Town of Cody v. Buffalo Bill Memorial Ass'n*, 196 P.2d 369, 377, 64 Wyo. 468 (Wyo.1948) ("Grants made to a charitable corporation may, of course, be of various kinds. They may be absolute or, on the other hand, proper terms, conditions and directions may be annexed thereto. In the latter case, the terms, conditions and directions annexed must be carried out.") We conclude that this is an action seeking to enforce the Scenic Preserve Trust.

*Standing to enforce a charitable trust*

[¶ 22] After our review of the common law and Wyoming's Uniform Trust Code, we are compelled to disagree with the district court on its ruling that Appellants have standing. A statement of the common law rule regarding the enforcement of charitable trusts is found in § 391 of the Restatement (Second) of Trusts, which provides:

**Who Can Enforce a Charitable Trust.**

A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a cotrustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest or by the settlor or his heirs, personal representatives or next of kin.

[¶ 23] *See also* Restatement (Third) of Trusts § 28, Cmt. C; IVA William F. Fratcher, *Scott on Trusts*, § 364 (4th ed.1989) ("A charitable trust is enforceable at the suit of the Attorney General, and ordinarily is not enforceable at the suit of any individual beneficiary, although in the case of some charitable trusts there may be beneficiaries having such a special interest in the performance of the trust as to entitle them to maintain a suit to enforce it."); *Scott on Trusts* at § 391.

[¶ 24] With regard to persons holding a special interest, the Restatement provision includes this comment:

> c. *Person having a special interest.* As has been stated, a trust is not a charitable trust where the beneficiaries are limited to

> (i) An owner of an interest in the real property burdened by the conservation easement;
> (ii) A holder of the conservation easement;
> (iii) A person having third-party rights of enforcement, as named in the instrument creating the conservation easement.

---

3. Wyoming law now includes the "Uniform Conservation Easement Act," which became effective July 1, 2005. *See* Wyo. Stat. Ann. § 34–1–201 *et seq.* That act includes the following provision.

   **Wyo. Stat. Ann. § 34–1–203. Judicial action; modification; termination.**

   (a) An action affecting a conservation easement may be brought by:

definite persons. **The mere fact that a person is a possible beneficiary is not sufficient to entitle him to maintain a suit for the enforcement of a charitable trust.** A charitable trust may, however, be created whereby a particular person is entitled to receive a benefit under the trust. Thus, a charitable trust may be created for the benefit of the minister for the time being of a particular church. See §§ 371, 375. In such a case a minister of the church can maintain a suit against the trustee for the enforcement of the trust. So also, where a charitable trust is created for the relief of poverty or the promotion of education, it may be provided that particular persons shall be entitled to a preference in receiving benefits under the trust. See §§ 370, 375. In such a case any such person can maintain a suit against the trustees for the enforcement of the trust. So also, a charitable trust may be created by the terms of which a particular corporation is entitled to a benefit under the trust. Thus, a charitable trust may be created by the terms of which the trustees are under a duty to pay the income to a particular incorporated church. In such a case the church corporation can maintain a suit against the trustees for the enforcement of the trust. [Emphasis added.]

■ [¶ 25] The rationale behind the common law rule is found in a leading treatise: The persons affected by such trusts are usually some or all of the members of a large and shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee might be subjected to unnecessary litigation. Often no given individual can prove that he will necessarily benefit from the charity. All may be prospective or possible beneficiaries, but no one can be said to be a certain recipient of aid. In ultimate analysis it is the public at large which benefits, and not merely the individuals directly assisted. Thus, there is some reason for vesting in a single authority the

discretion and power to enforce such trusts, rather than in leaving the matter to the numerous, changing, and uncertain members of the group to be aided.

Ronald Chester, George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 411, at 13 (3d ed.2005); *see also State ex rel. Nixon v. Hutcherson,* 96 S.W.3d 81, 84 (Mo.2003). In other words, "It is well established that persons are not entitled to sue if their only benefit from enforcement of the trust is that shared by other members of the public. The community's interest in the enforcement of a charitable trust must be vindicated by the attorney general." *Mitchellville Cmty. Ctr., Inc. v. Vos (In re Clement Trust),* 679 N.W.2d 31, 37 (Iowa 2004).

[¶ 26] Recently, the common law standing rule has expanded. "[A]s public attention to laxity in the enforcement by the Attorney General increases, courts have begun to expand standing to enforce charitable trusts" to others. Chester, et al., *The Law of Trusts and Trustees,* § 411, at 2. Generally, that power has been extended to individuals with a fiduciary interest (trustees, former and subsequent trustees, or subtrustees); to specially interested beneficiaries; and to the settlors and their successors. *Id.,* at § 412—415; *see also Forest Guardians v. Powell,* 130 N.M. 368, 24 P.3d 803, 808 (App.2001).

■ [¶ 27] With these common law principles in mind, we turn to Wyoming's Uniform Trust Code.[4] Wyo. Stat. Ann. § 4–10–106 ("The common law of trusts and principles of equity supplement this act, except to the extent modified by this act or another statute of this state.") With regard to who may act as beneficiary of charitable trusts, Wyoming's Uniform Trust Code provides:

**Wyo. Stat. Ann. § 4–10–406. Charitable purposes; enforcement.**

. . . .

(c) The settlor of a charitable trust, among others, may maintain a proceeding to enforce the trust.

**4.** The Uniform Trust Code, Wyo. Stat. Ann. § 4–10–101 *et. seq.,* became effective July 1, 2003, just 13 days before Appellants commenced this action. The Uniform Trust Code "applies to all

judicial proceedings concerning trusts commenced on or after July 1, 2003." Wyo. Stat. Ann. § 4–10–1103(a)(ii) (LexisNexis 2005).

**Wyo. Stat. Ann. § 4–10–110. Others treated as qualified beneficiaries.**

. . . .

(d) The attorney general of this state may exercise the rights of a qualified beneficiary with respect to a charitable trust having its principal place of administration in this state by notifying the trustee by written notice.

■ [¶ 28] Reading Wyo. Stat. Ann. § 4–10–110(d) and § 4–10–406(c) (LexisNexis 2005) in *pari materia,* and keeping in mind that the Uniform Trust Code is supplemented by the common law of trusts, we conclude that, in Wyoming, a charitable trust may be enforced by a settlor, the attorney general, or a qualified beneficiary of the trust.

[¶ 29] Because none of the Appellants is a settlor of the Scenic Preserve Trust or the attorney general, the only question is whether or not Appellants are qualified beneficiaries. In its ruling that Appellants had standing, the district court found that Appellants were beneficiaries. It wrote:

... [U]nder current Wyoming law, W.S. § 4–10–103, a beneficiary would include any person or corporation that has a present or future beneficial interest in the trust; the conservation easement was granted and accepted for the benefit of Wyoming citizens, so a Johnson County resident, including Mr. Hicks, is a beneficiary and has standing.

[¶ 30] However, § 4–10–110(d) refers to "qualified beneficiaries," not simply "beneficiaries." Indeed, the Uniform Trust Code draws a distinction between the two types of beneficiaries, defining the terms in this fashion:

(ii) "Beneficiary" means a person that:

(A) Has a present or future beneficial interest in a trust, vested or contingent; or

(B) In a capacity other than that of trustee, holds a power of appointment over trust property.

. . . .

(xv) "Qualified beneficiary" means a beneficiary who is currently entitled to distributions of income or principal from the trust or has a vested remainder interest in the

residuary of the trust which is not subject to divestment;

Wyo. Stat. Ann. § 4–10–103(a) (LexisNexis 2005).

[¶ 31] While Appellants may meet the definition of "beneficiary," Appellants do not meet the definition of "qualified beneficiary," a term analogous to the common law concept of "special interest." Appellants' only benefit from enforcement of the trust is that shared by other members of the public. Therefore, we hold that Appellants lack standing to enforce the terms of the Scenic Preserve Trust.

*The Attorney General's role in this case*

[¶ 32] The parties also take different positions with respect to the Attorney General's declination to become involved in this suit. Appellants contend that the Attorney General's approach means that they, Appellants, have the green light to pursue this litigation. For their part, the Dowds contend that "[o]nce the Attorney General declined to participate, for whatever reason, the case should have been over because Hicks does not have standing, and standing cannot be conferred by consent of anyone."

[¶ 33] We take a third, more pragmatic, approach to the Attorney General's non-participation. At the time the Attorney General declined to participate, the district court had already ruled that Appellants had standing to pursue this action. While we do not agree with that ruling, at the time, it was the law of this case. Given the district court's ruling, it was understandable that the Attorney General would allow well-represented private litigants to pursue this litigation. However, there is nothing indicating that the Attorney General formally authorized Appellants to pursue this litigation on his behalf. At the same time, given our holding that Appellants do not have standing, the Attorney General has the opportunity to reassess his position.

*Matters of great public interest and importance*

■ [¶ 34] In their reply brief, Appellants again argue that their standing should be recognized under "the great public interest and importance doctrine," which acts as

an exception to the standing requirement. We discussed that doctrine at length in *Jolley*, where we wrote:

> The doctrine of great public interest or importance should be applied cautiously:
>
>> The question of great public importance rests with this court, *Kellner v. District Court In and For City and County of Denver*, 127 Colo. 320, 256 P.2d 887, 888. This exception must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance.
>
> *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo.1974). We decline to expand the doctrine to encompass alleged violations of an agency's rules and regulations that do not directly implicate the constitutionality of legislation or an agency's actions or inactions.

*Jolley*, ¶ 10, 38 P.3d at 1078–79.

[¶ 35] Here, Appellants argue that the Board violated Wyo. Const. art. 3, § 36[5] and/or Wyo. Const. art. 16 § 6.[6] These arguments were neither referenced in Appellants' complaint nor meaningfully developed below. Also, in their appellate brief, Appellants devote only slightly more than one page to the constitutional arguments. In that one page, Appellants do not establish how article 3 of the Wyoming Constitution applies to this matter, given that the article concerns the legislative branch. Appellants also do not provide much to establish that Wyo. Const.

art. 16 § 6 would apply to the transactions at issue. In addition, because Wyoming's Uniform Trust Code and the common law both provide guidance regarding the persons who maintain standing to enforce a charitable trust, perhaps the "great public interest or importance" exception should be employed with even greater caution in this instance. Given all these circumstances, and employing the requisite level of caution, we conclude that this is not a matter of great public interest and importance.

*Public meetings law*

[¶ 36] Finally, we briefly address Appellants' claim that the Board's actions violated the Public Meetings Law, Wyo. Stat. Ann. § 16–4–403 (LexisNexis 2005).[7] We will assume, *arguendo*, that Appellants have standing to pursue this issue. Appellants' theory is that the Scenic Preserve Trust is a subagency of the Board, meaning that separate notice was required for any meetings of the Scenic Preserve Trust. However, Appellants provide no authority to support their position. We have long recognized that "a trust is a fudiciary [fiduciary] relationship in which one person is the holder of the title to property subject to an equitable obligation to keep or use the property for the benefit of another." *Scotti's Drive In Restaurants, Inc. v. Mile High—Dart In Corp.*, 526 P.2d 1193, 1196 (Wyo.1974). We cannot agree that the Board was required to hold, and provide notice of, a separate meeting, when the members intended to act in their role as trustees of the Scenic Preserve Trust. To

---

5. **Wyo. Const. art. 3 § 36. Prohibited appropriations.**

   No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denominational or sectarian institution or association.

6. **Wyo. Const. art. 16 § 6. Loan of credit; donations prohibited; works of internal improvement**

   Neither the state nor any county, city, township, town, school district, or any other political subdivision, shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or

corporation, except that funds of public employee retirement systems and the permanent funds of the state of Wyoming may be invested in such stock under conditions the legislature prescribes. The state shall not engage in any work of internal improvement unless authorized by a two-thirds (2/3) vote of the people.

7. **Wyo. Stat. Ann. § 16–4–403. Meetings to be open; participation by public; minutes.**

   (a) All meetings of the governing body of an agency are public meetings, open to the public at all times, except as otherwise provided. No action of a governing body of an agency shall be taken except during a public meeting following notice of the meeting in accordance with this act. Action taken at a meeting not in conformity with this act is null and void and not merely voidable.

agree with such an argument would place technicalities and form over substance. The bottom line here is that the Board took its actions at a regularly scheduled public meeting, and we, therefore, must agree with the district court that no violation of the public meetings law occurred.

[¶ 37]  For the reasons stated above, the district court's decision is affirmed.