# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 70

### APRIL TERM, A.D. 2014

### May 30, 2014

JAMES THOMAS GHEEN and
EDWARD DALE GHEEN,

Appellants
(Petitioners),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF HEALTH,
DIVISION OF HEALTHCARE
FINANCING/EQUALITYCARE,

Appellee
(Respondent).

S-13-0159

*Appeal from the District Court of Goshen County*
The Honorable Keith G. Kautz, Judge

*Representing Appellants:*
     Craig C. Cook and Dennis C. Cook, Cook and Associates, P.C., Laramie, Wyoming.  Argument by Mr. Dennis C. Cook.

*Representing Appellee:*
     Peter K. Michael, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Donna A. Murray, Senior Assistant Attorney General. Argument by Ms. Murray.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]    The State of Wyoming, ex rel. Department of Health, Division of Healthcare Financing/Equalitycare (the Department) filed a lien against two properties to recover the cost of Medicaid benefits paid on behalf of Peggy Gheen.  Mrs. Gheen's sons, James and Edward Gheen (hereinafter "Gheen sons"), filed a petition to remove a false lien and quiet title, claiming they were the rightful owners of the properties pursuant to quitclaim deeds recorded after their mother's death.  The district court granted summary judgment in favor of the Department, ruling that under the relevant federal and state laws, the lien was appropriate.[1]  The Gheen sons appealed.

[¶2]    We affirm.

## ISSUES

[¶3]    The Gheen sons present the following issues on appeal:

> I.       Whether the district court had subject matter jurisdiction to determine sua sponte the validity of the quitclaim deeds transferring property to [the Gheen sons] when [the Department] lack[ed] standing to question the grantor's donative intent at the time of due execution of the conveying deeds, or in the alternative whether it erred as a matter of law by nullifying two uncontested quitclaim deeds.
>
> II.      Whether the remedial provisions of Wyo. Stat. Ann. § 29-1-601(b) may be invoked against [the Department] as claimant on the legally groundless and impermiss[i]ble recorded claim of lien against property known to belong to [the Gheen sons], as individuals against whom [the Department] ha[s] no rights to recover, as a matter of public record.

The Department states the issues as:

> I.       Federal and state law require [the Department] to seek reimbursement from the real and personal property in which an individual had any legal title or interest at the

---

[1] The district court did quiet title in the Gheen sons to an undivided one-half interest in one of the properties, which they had received in 2002 from their father's estate.

1

time of death in order to recover amounts paid for medical assistance. [The Department] provided medical assistance to Peggy Gheen during the last three months of her life. After Mrs. Gheen died[,] [the Department] placed a lien on two parcels of land in which Ms. Gheen had an interest.

Ms. Gheen's sons brought a petition to remove the lien claiming it was false or frivolous because they had recorded deeds which they found after their mother died. Although the deeds were dated in 2006, they were not delivered to the Gheen [sons], the Gheen [sons] did not know of them until after their mother's death, and they were not recorded until 2011.

Did the district court correctly rule that, as a matter of law, there had been no conveyance of the property in 2006 and that [the Department] could record a lien against it?

II. Wyoming's prohibition against frivolous liens invalidates liens filed against the property of a government official based on that official's performance or nonperformance of official duties. Did the district court correctly determine that this statute does not apply to a lien filed by [the Department] against Ms. Gheen's property and correctly dismiss the Petition to Remove False Claim filed pursuant to Wyoming Statute § 29-1-601(b)?[2]

**FACTS**

[¶4]    This matter involves two Goshen County, Wyoming properties—a residence and a farm. Dale Gheen, who was Mrs. Gheen's husband and the Gheen sons' father, passed away in 2001. Mr. and Mrs. Gheen owned the residential property as tenants by the entireties, and after Mr. Gheen's death, Mrs. Gheen filed an affidavit stating she was the sole owner pursuant to her right of survivorship. The farm property was distributed through Mr. Gheen's intestacy proceedings, with an undivided one-half distributed to Mrs. Gheen and an undivided one-quarter interest to each of the Gheen sons. Mrs. Gheen executed quitclaim deeds for her interests in the residential and farm properties to the

---

[2] The Department overstates the district court's ruling in this issue. *See* ¶ 33, *infra.*

Gheen sons and they were notarized on December 29, 2006. She did not, however, inform her sons about the deeds or record them.

[¶5]   On May 4, 2010, James Gheen applied for Medicaid benefits on behalf of Mrs. Gheen. In the application, he indicated that Mrs. Gheen owned the residential property and an interest in the farm property. The Department approved Mrs. Gheen's application, and she received $10,508.54 in Medicaid benefits before she passed away on August 1, 2010.

[¶6]   The Gheen sons discovered the quitclaim deeds in Mrs. Gheen's personal papers after her death. On the advice of their attorney, they recorded the deeds on March 1, 2011, effectively avoiding probate of their mother's real property interests. On May 19, 2011, the Department filed a lien against both properties.

[¶7]   The parties corresponded over the next several months about the effect of the quitclaim deeds on the Department's lien. The Department eventually took the position that Mrs. Gheen owned an interest in the properties at the time of her death, which was subject to the Medicaid lien. On July 11, 2012, the Gheen sons filed a petition to remove false lien under Wyo. Stat. Ann. § 29-1-601 (LexisNexis 2011). In general, they asserted the Department's lien was false because they owned the properties pursuant to the quitclaim deeds and they did not owe any debt to the Department. The Gheen sons claimed they were entitled to removal of the lien, statutory damages and attorney fees.

[¶8]   The Department answered asserting the lien was valid and § 29-1-601 did not apply to Medicaid liens. The Gheen sons moved to amend their petition to clarify that their action was to quiet title in the properties as supplemented by the damages provisions of § 29-1-601. The district court granted the motion to amend.

[¶9]   The Department filed a motion for summary judgment asserting its lien was proper because Mrs. Gheen owned the properties at the time of her death and the quitclaim deeds were not valid conveyances. The Gheen sons filed a cross motion for summary judgment, claiming the deeds were valid, their mother did not own any interest in the properties at the time of her death, and the Department did not take appropriate action to have the deeds declared void. They also asserted that, regardless of the efficacy of the deeds, they owned an undivided one-half interest in the farm property as a result of their inheritance from their father and it could not be encumbered by the Department's lien.

[¶10] The district court held a hearing on the competing summary judgment motions on January 2, 2013. On April 18, 2013, the district court granted the Department's motion for summary judgment declaring its lien valid as to Mrs. Gheen's residence and one-half interest in the farm property. It also granted the Gheen sons' motion to quiet title and declared the Department's lien did not apply to their undivided one-half interest in the farm property. The Gheen sons appealed.

## STANDARD OF REVIEW

[¶11]  A district court's summary judgment order is reviewed *de novo*, using the same materials and following the same standards as the district court.  *Michael's Constr., Inc. v. American Nat'l Bank,* 2012 WY 76, ¶ 8, 278 P.3d 701, 703-04 (Wyo. 2012); *Grynberg v. L & R Exploration Venture,* 2011 WY 134, ¶ 16, 261 P.3d 731, 736 (Wyo. 2011). W.R.C.P. 56(c) allows summary judgments when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The facts are viewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record.  *Michael's Constr.,* ¶ 8, 278 P.3d at 703-04.

## DISCUSSION

### 1.  *General Medicaid Recovery Principles*

[¶12]  We recently discussed the general principles of Medicaid benefits recovery in *Estate of Marusich v. State ex rel. Dep't of Health,* 2013 WY 150, ¶¶ 9-12, 313 P.3d 1272, 1276-78 (Wyo. 2013) and will not repeat the full discussion here.  In general, Medicaid is a joint federal and state program that provides medical benefits to qualified recipients and is  a "'payer of last resort.'"  *Arkansas Dep't of Health & Human Servs. v. Ahlborn,* 547 U.S. 268, 291, 126 S. Ct. 1752, 1767, 164 L. Ed. 2d 459 (2006), quoting S.Rep. No. 99-146 at 313 (1985); Wyo. Stat. Ann. §§ 42-4-101 through 102; *State of Wyoming ex rel. Dep't of Health, Div. of Healthcare Financing v. Dairyland Insur. Co.,* 11 P.3d 348, 350 (Wyo. 2000).

[¶13]  Wyoming Medicaid statutes include provisions for reimbursement of Medicaid payments and authorize the filing of a lien against the property of a deceased recipient's "estate" as defined in Wyo. Stat. Ann. § 42-4-207(j) (LexisNexis 2013).  That statute states in relevant part:

> (j) The department may file a lien against the property of any estate, as defined in W.S. 42-4-206(g), of a deceased recipient for the amount of medical assistance provided while the recipient was fifty-five (55) years of age or older or while the recipient was an inpatient in a nursing facility, intermediate care facility for people with intellectual disability or other

medical institution. The department shall perfect this lien by filing a notice in the county in which the real property exists. . . .

Section 42-4-207(j). Section 42-4-206(g) (LexisNexis 2013) defines "estate" as:

> (ii) "**Estate**" shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of this state's probate law, and **includes any other real and personal property and other assets in which the individual had any legal title or interest at the time of death to the extent of that interest**, including such assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy, tenancy in common, survivorship life estate, living trust or other arrangement.

(Emphasis added).

[¶14] As we discussed at length in *Marusich,* ¶¶ 10-12, 313 P.3d at 1277-78, § 42-4-206(g)(ii)'s definition of "estate" includes, in addition to typical probate assets, "other assets in which the individual had any legal title or interest at the time of death." The rule also encompasses the corollary—the statutory definition of estate does not include property properly transferred prior to death.[3] *Id. See also In re Estate of Barg,* 752 N.W.2d 52 (Minn. 2008); *In re Estate of Grote,* 766 N.W.2d 82, 86-87 (Minn. Ct. App. 2009); *North Dakota Dep't of Human Servs. v. Thompson,* 586 N.W.2d 847, 850 (N.D. 1998). The issue raised in this case is whether, under § 42-4-206(g)(ii), Mrs. Gheen owned an interest in the properties at the time of her death.

### 2. *Department's Standing to Contest the Deed*

[¶15] The district court accepted the Department's argument that the quitclaim deeds were not effective to transfer Mrs. Gheen's property interests because they were not delivered during her lifetime. The Gheen sons assert the Department did not have standing to contest the validity of the deeds. Standing implicates a court's subject matter jurisdiction and can, therefore, be challenged at any time. Given the jurisdictional nature of the question, the existence of standing is strictly a legal issue. *Northern Laramie Range Foundation v. Converse County Bd. of County Comm'rs,* 2012 WY 158, ¶ 22, 290 P.3d 1063, 1073 (Wyo. 2012); *Halliburton Energy Servs. v. Gunter,* 2007 WY 151, ¶ 10, 167 P.3d 645, 649 (Wyo. 2007); *Hicks v. Dowd,* 2007 WY 74, ¶ 18, 157 P.3d 914, 918 (Wyo. 2007).

---

[3] We are not addressing the possibility of recovering assets which were improperly transferred during the "look back" period. *See, e.g.*, Wyo. Stat. Ann. § 42-4-207(h).

[¶16] A party generally has standing if it is "properly situated to assert an issue for judicial determination." *Cox v. City of Cheyenne,* 2003 WY 146, ¶ 9, 79 P.3d 500, 505 (Wyo. 2003). *See also Northern Laramie,* ¶ 23, 290 P.3d at 1073. As we stated above, the Department has the statutory right to seek reimbursement of Medicaid benefits under §§ 42-4-206 and 207. It may do so by filing a lien against property included in the Medicaid recipient's estate, as that term is defined in § 42-4-206(g)(ii). The statutes, therefore, give the Department a stake in determining the assets included within the statutory "estate."

[¶17] The Gheen sons claim that, under Wyo. Stat. Ann. § 34-1-127 (LexisNexis 2013), the Department did not have standing to contest delivery of the deeds from their mother to them. Section 34-1-127 states:

> When a deed or mortgage purports to be an absolute conveyance in terms, but is made or intended to be made defeasible by force of defeasance, or other instrument for that purpose, the original conveyance shall not be thereby defeated or affected as against any person other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded in the office of the county clerk of the county where the lands lie.

[¶18] This statute applies only to a conveyance that is defeasible or subject to defeasance and restricts the persons who may challenge it unless the document has been recorded. Defeasance is defined as "[a]n instrument which defeats the force or operation of some other deed or estate. That which is in the same deed is called a 'condition;' and that which is in another deed is a 'defeasance.'" The plain meaning of defeasible is: "Subject to be defeated, annulled, revoked, or undone upon the happening of a future event or the performance of a condition subsequent, or by a conditional limitation." *Black's Law Dictionary* 481 (9th ed. 2009).

[¶19] The concept of defeasance, therefore, relies on the validity of the original conveyance, which can thereafter be defeated by a subsequent action or happening. *See, e.g.*, *Moorcroft v. Lang,* 761 P.2d 96 (Wyo. 1988) and *Wood v. Bd. of County Comm'rs of Fremont County,* 759 P.2d 1250, 1252 (Wyo. 1988) (explaining that a defeasible interest may also be known as a fee simple determinable). Here, the Department is not claiming the quitclaim deeds were subject to defeasance, but, rather, that they were not effective in the first place because they were not delivered by the grantor, Mrs. Gheen, to the grantees, the Gheen sons. Section 34-1-127 does not, therefore, apply in this case. The Department has standing to challenge the quitclaim deeds.

### 3. *Effectiveness of Deeds/Delivery*

[¶20] The Gheen sons argue the quitclaim deeds were effective when Mrs. Gheen executed them in 2006. We have stated in several cases that "[t]o effect a conveyance transferring title, a deed must be both executed and delivered." *Lenhart v. Desmond,* 705 P.2d 338, 342 (Wyo. 1985). *See also Hein v. Lee,* 549 P.2d 286, 292 (Wyo. 1976); *B-T Ltd. v. Blakeman,* 705 P.2d 307, 312 (Wyo. 1985). In *Forbes v. Volk,* 358 P.2d 942, 945 (Wyo. 1961), quoting *Klouda v. Pechousek,* 110 N.E.2d 258, 262 (Ill. 1953), we stated: "The delivery is as necessary to make it a deed as the signing and sealing [notarization]." 23 Am. Jur. 2d *Deeds* § 103 states the concept another way but confirms that delivery is required for a deed to be valid: "A deed conveying title must be delivered as the final step in the execution of deed. Thus, a deed, to be operative as a transfer of the ownership of land or an interest or estate therein, must be delivered; it is delivery that gives the instrument force and effect."

[¶21] The Gheen sons argue that delivery is not required for a quitclaim deed, citing the differences in the statutory language applicable to warranty and quitclaim deeds. Wyo. Stat. Ann. § 34-2-103 (LexisNexis 2013) states the effect of a warranty deed:

> **Every deed** in substance in the above form [§ 34-2-102], **when otherwise duly executed, shall be deemed and held a conveyance in fee simple, to the grantee,** his heirs and assigns, **with covenants on the part of the grantor,** (a) **that at the time of the making and delivery of such deed** he was lawfully seized of an indefeasible estate in fee simple in and to the premises therein described, and had good right and power to convey the same; (b) that the same were then free from all incumbrances; and (c) that he warrants to the grantee, his heirs and assigns, the quiet and peaceful possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same. And such covenants shall be obligatory upon the grantor, his heirs and personal representatives, as fully, and with like effect as if written at length in such deed.

(Emphasis added). The effect of a quitclaim deed is set out in Wyo. Stat. Ann. § 34-2-105 (LexisNexis 2013):

> **Every deed** in substance in the form prescribed in the foregoing section [§ 34-2-104], **when otherwise duly executed, shall be deemed and held a sufficient conveyance, release and quitclaim to the grantee,** his heirs and assigns, **in fee of all the then existing legal or equitable**

7

**rights of the grantor** in the premises therein described, but shall not extend to after acquired title unless words are added expressing such intention.

(Emphasis added). The Gheen sons claim that since the latter part of the emphasized language of § 34-2-103 explicitly discusses delivery in the context of warranty deeds while § 34-2-105 does not mention delivery for quitclaim deeds, delivery is required only to validate a conveyance by warranty deed but is not required for a valid quitclaim deed.

[¶22] In determining the meaning of statutes, our principal consideration is the legislature's intent, which must be determined, if possible, from the plain and ordinary meaning of the words. When a statute is clear and unambiguous, i.e., "its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability," that meaning governs. If a statute is found to be ambiguous because it is vague or uncertain and subject to varying interpretations, rules of statutory construction are applied. *Office of State Lands & Invs. v. Mule Shoe Ranch, Inc.,* 2011 WY 68, ¶ 13, 252 P.3d 951, 954–55 (Wyo. 2011); *Dorr v. Smith, Keller & Assoc.,* 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo. 2010).

[¶23] Sections 34-2-103 and 105 distinguish between the effects of the two types of deeds. The statutes do not, however, specifically delineate all of the requirements for a valid conveyance under either scenario. In fact, both statutes discuss the effectiveness of deeds that are "duly executed." Section 34-2-103's reference to delivery is in the context of the guarantees of title included within a warranty deed., i.e., the grantor covenants that at the time of delivery, the grantor has good title to the property. The fact that § 34-2-105 does not contain similar language regarding delivery of a quitclaim deed simply highlights the differences between warranty and quitclaim deeds; a quitclaim deed does not contain a guarantee that the grantor has any title or interest in the property. The obvious purpose of the statute is to highlight the lack of a covenant by the grantor of any particular interest in the property.

[¶24] Each of the statutes has been in effect since 1895. Over the years, our case law has consistently stated that delivery is required in order to effectuate any deed. For example, *Hein,* 549 P.2d at 292, concerned the validity of a quitclaim deed which had been placed in escrow. We noted the common use of escrowed quitclaim deeds in transactions and ruled the signed quitclaim deed was not effective until delivery. Similarly, *Maurer v. Ballou,* 440 P.2d 126, 126-28 (Wyo. 1968) stated delivery was required for an effective quitclaim deed. *See also Jenkins v. Miller,* 2008 WY 45, ¶¶ 13-14, 180 P.3d at 925, 930-31 (Wyo. 2008) (delivery and acceptance required for easement to be effective). The legislature has not taken any action to change the statutes in response to this Court's rulings that delivery is required for a valid conveyance by quitclaim deed, thereby confirming the correctness of our rulings. *See, e.g., Barlow Ranch, L.P. v. Greencore Pipeline Co.,* 2013 WY 34, ¶ 37, 301 P.3d 75, 87-88 (Wyo.

8

2013); *Crago v. Bd. of County Comm'rs of Crook County,* 2007 WY 158, ¶ 17, 168 P.3d 845, 854 (Wyo. 2007); *Albertson's, Inc. v. City of Sheridan,* 2001 WY 98, 33 P.3d 161 (Wyo. 2001).

[¶25]   The two essential elements of delivery are: "1) transferring possession of the deed by the grantor; and 2) acceptance of the deed by the grantee." *B-T,* 705 P.2d at 312; *Jenkins*, ¶ 13, 180 P.2d at 930.  Delivery and acceptance are both matters of intention, as manifested by the words and actions of the grantor and grantee, respectively.  *B-T,* 705 P.2d at 312-13; *Jenkins,* ¶ 13, 180 P.2d at 930-31.  The Gheen sons maintain that delivery is presumed to have occurred in this case because they took possession of the deeds and recorded them.  In *Forbes,* 358 P.2d at 945, we stated a rebuttable presumption of delivery was created when the grantee obtained possession of the deed and it was recorded.  That principle of law does not, however, further the Gheen sons' position that the deeds were delivered by their mother because it is undisputed that they did not come into possession of the deeds or record them until after Mrs. Gheen's death.  In fact, they conceded they knew nothing about the deeds until they found them in her personal papers.

[¶26]   The Gheen sons also seem to argue the deeds were constructively delivered during Mrs. Gheen's lifetime when she executed and placed them with her personal papers. Constructive delivery may occur by placing an executed deed in a location where the grantee has access, but it must be coupled with evidence of the grantor's intent to immediately pass title to the property.  *Lenhart,* 705 P.2d at 342.  In the case at bar, the Gheen sons did not present any evidence that Mrs. Gheen had the intent to pass title to the properties during her lifetime.  The Gheen sons had no knowledge of the deeds and, in fact, James Gheen listed the properties as assets of his mother's when he filled out the application for Medicaid benefits three months before her death.  While the documents were found with her personal papers, there is no evidence that the Gheen sons had routine access to those papers while Mrs. Gheen was alive.  In fact, they apparently did not search through the papers until sometime after her death.  The evidence in this case indisputably shows the deeds were not delivered by Mrs. Gheen to her sons.

[¶27]   The Gheen sons also look to Wyo. Stat. Ann. § 42-2-404 (LexisNexis 2013) in arguing that the properties were transferred in 2006.  That section states:

> In the case of an asset held by an individual in common with another person in a joint tenancy, tenancy in common or similar arrangement, **the asset**, or the affected portion of the asset, **shall be considered to be transferred** by the individual **when any action is taken**, either by the individual or by any other person, **that reduces or eliminates the individual's ownership or control of the asset**.

Section 42-2-404 (emphasis added). First of all, we question whether this statute applies to the residential property because Mrs. Gheen owned the property individually, not in "joint tenancy, tenancy in common, or similar arrangement." In any event, the provision does not support the Gheen sons' argument because, although Mrs. Gheen signed the deeds, she did not deliver them. The deeds were not, therefore, effective to reduce or eliminate her ownership or control of the assets.

### 4. Due Process

[¶28] The Gheen sons claim they were denied due process of law by the procedures utilized in this case. In general, due process entitles a party to notice and the opportunity to be heard. U.S. Const. amends. 5 and 14; Wyo. Const. Art. 1, § 6; *Reynolds v. Moore,* 2014 WY 20, ¶ 11, 318 P.3d 362, 366 (Wyo. 2014).

[¶29] The Gheen sons argue § 42-4-207(h) required the Department to affirmatively petition the district court to void the deeds and its failure to do so denied them due process of law. That section states:

> (h) Upon sale of the property on which a lien has been imposed pursuant to subsection (c) or (j) of this section, the department shall seek recovery of the amount stated in its lien. **Transfers of real or personal property on or after the look-back dates defined in 42 U.S.C. § 1396p[4] by recipients of medical assistance under this chapter, or their spouses, without adequate consideration are voidable and may be set aside by an action in district court**.

Section 42-4-207(h) (emphasis and footnote added). Once again, the Gheen sons' argument relies upon the incorrect premise that the deeds were effective transfers.

[¶30] Here, the Department recorded a lien against the properties to perfect its security interest. It provided notice of the lien to the Gheen sons and the parties negotiated unsuccessfully for several months. Although the Department indicated that it could file an action to void the quitclaim deeds, it did not do so. Instead, the Gheen sons filed a petition to remove a false lien, which was later amended to request title be quieted to them.

---

[4] The look-back period under 42 U.S.C. § 1396p for deeds dated December 29, 2006, is sixty months.

[¶31] In its answer to the petition, the Department asserted, as an affirmative defense, that it was statutorily authorized to file the lien against the properties.[5] The Department's motion for summary judgment asserted the quitclaim deeds were not effective because they had not been delivered during Mrs. Gheen's lifetime and Mrs. Gheen owned interests in the properties at the time of her death which were subject to a lien under §§ 42-4-206 and 207. The Gheen sons responded to the Department's argument. The issue of the validity of the deeds was, therefore, effectively joined and fully litigated. The Gheen sons do not identify any additional argument or evidence which would have been produced had the Department initiated an action to void the deeds. They were, unquestionably, provided notice and an opportunity to be heard regarding the validity of the deeds.

### 5. *False Lien Statute*

[¶32] Section 29-1-601 provides in pertinent part:

> (b) Any person whose real or personal property is subject to a recorded claim of lien who believes the claim of lien is invalid under subsection (a) of this section, was forged, or that the lien claimant knew at the time of filing that the lien was groundless, contained a material misstatement or false claim, may petition the court having jurisdiction over the lien of the county in which the claim of lien has been recorded for the relief provided in this subsection. The petition shall state the grounds upon which relief is requested, and shall be supported by the affidavit of the petitioner or his attorney setting forth a concise statement of the facts upon which the motion is based.
> . . . .
>
> (iv) If, following a hearing on the matter the court determines that the claim of lien is invalid under subsection (a) of this section, was forged or that the lien claimant knew at the time of filing that the lien was groundless or contained a material misstatement or false claim, the court shall issue an order striking and releasing the claim of lien and awarding damages of one thousand dollars ($1,000.00) or actual damages,

---

[5] The Gheen sons assert the Department was required to present a compulsory counterclaim under W.R.C.P. 13. It makes no difference whether an assertion is characterized as a counterclaim or defense because W.R.C.P. 8(c) specifically allows: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

whichever is greater, costs and reasonable attorneys' fees to the petitioner to be paid by the lien claimant;

(v) If the court determines that the claim of lien is valid, the court shall issue an order so stating and shall award costs and reasonable attorneys' fees to the lien claimant to be paid by the petitioner.

[¶33] The Department asserted in the district court that § 29-1-601 did not apply to Medicaid liens. Although the district court did not address the issue of the applicability of the statute to the Department's lien in any detail, it indicated that it may apply. The district court ruled the Department's lien could not extend to the Gheen sons' undivided one-half interest in the farm property and quieted title in that portion of the property to them. Using the language of § 29-1-601, the district court concluded:

> 23. The State's lien against all of [the farm property], instead of only against Ms. Gheen's undivided ½ of [the farm property], does not constitute a material misstatement or false claim. Because the lien properly applies to an **undivided** ½ of the property, and because it specified that it was made only against Ms. Gheen's property, there was no material misstatement or false claim. The lien was not groundless, but instead was valid against [the residence] and against Ms. Gheen's undivided ½ of [the farm property].
> 24. As a matter of law, [the Gheen sons'] claim that the [Department] filed a "groundless" lien or a lien based on a "material misstatement" or "false claim" must be denied.
> 25. As a matter of law, [the Gheen sons'] claim for Quiet Title as to their undivided ½ of [the farm property] must be granted.

(Emphasis in original).

[¶34] The Department did not appeal the district court's ruling quieting title in favor of the Gheen sons on their one-half interest in the farm property. Although the Gheen sons assert that the district court erred by denying them relief under the remedial provisions of § 29-1-601, their argument focuses on the claimed error by the district court in granting summary judgment in favor of the Department on the validity of its lien. They do not argue the district court erred by ruling as a matter of law that the Department's lien against their one-half interest in the farm property was not groundless or based on a material misstatement or false claim. Given our affirmance of the district court's decision that the Department's Medicaid lien was valid as to the residence and Mrs.

Gheen's one-half interest in the farm property, we do not need to further address the statute.

[¶35]  Affirmed.[6]

---

[6] We recognize both parties have strong philosophical beliefs associated with the issues in this case.  The Gheen sons maintain the Department was improperly attempting to "bully" them into paying a debt they did not owe, while the Department asserts the Gheen sons were attempting to prevent the state from recovering the reimbursement to which it was legally entitled. The record of this case does not establish that either party had nefarious intentions.  The answers to the legal questions are found directly in our statutes, federal statutes and our case law, and the parties' assertions of moral and ethical superiority was unnecessary and irrelevant.